# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

THE UNITED STATES OF AMERICA,

    *Plaintiff,*

        v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State for the
State of Georgia,

    *Defendant.*

Civil Action No. 1:26-cv-00485-ELR

## DEFENDANT RAFFENSPERGER'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND REQUEST FOR HEARING

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................ii

TABLE OF AUTHORITIES ..........................................................................iii

INTRODUCTION ............................................................................................1

FACTUAL BACKGROUND ...........................................................................3

    I.    Georgia and federal laws on voter registration and list
        maintenance. ..........................................................................................3

        A.    Georgia law on statewide voter database. .......................................3

        B.    Federal laws governing voter registration and
              maintenance.....................................................................................5

    II.    The Attorney General's demand for the unredacted voter file. .............7

    III.    This filing and service of this litigation. ..................................................11

ARGUMENT AND CITATION OF AUTHORITY ......................................12

    I.    Legal standards under the CRA. .............................................................12

    II.    The CRA does not preempt Georgia's privacy protections for
        voters.......................................................................................................13

    III.    The DOJ's stated purpose is not consistent with the CRA, so it
        cannot proceed with this action. .............................................................16

    IV.    The DOJ's demand letter does not meet the statutory
        requirements under the CRA. ..................................................................17

    V.    The DOJ's demand exceeds its authority under other statutory
        provisions. ...............................................................................................19

        A.    The DOJ's request violates the Privacy Act. ..................................20

        B.    The DOJ's request violates the E-Government Act. ......................21

        C.    The DOJ's request violates the Driver Privacy Protection
              Act (DPPA). ....................................................................................21

CONCLUSION...............................................................................................22

# TABLE OF AUTHORITIES

## Cases

*A. Philip Randolph Institute v. Raffensperger,*
Case No. 1:24-cv-03412-SDG (N.D. Ga.) ...................................................... 6

*Arizona v. Inter Tribal Council of Arizona, Inc.,*
570 U.S. 1 (2013) ............................................................................... 14, 15, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................... 12

*Black Voters Matter Fund v. Raffensperger,*
508 F. Supp. 3d 1283 (N.D. Ga. 2020) ......................................................... 5

*Brown v. Sec'y of State of Florida,*
668 F.3d 1271 (11th Cir. 2012) ................................................................... 14

*Broyles v. Texas,*
618 F. Supp. 2d 661 (S.D. Tex. 2009) ......................................................... 16

*Cottone v. Jenne,*
326 F.3d 1352 (11th Cir.2003) .................................................................... 20

*Crawford v. Marion Cnty. Election Bd.,*
472 F.3d 949 (7th Cir. 2007) ...................................................................... 16

*Douglas v. Yates,*
535 F.3d 1316 (11th Cir. 2008) ................................................................... 20

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
878 F.3d 371 (D.C. Cir. 2017) ..................................................................... 21

*Fair Fight Action, Inc. v. Raffensperger,*
1:18-CV-5391-SCJ, 2021 WL 9553856 (N.D. Ga. Mar. 31, 2021) .............. 6

*Fair Fight Action, Inc. v. Raffensperger,*
634 F. Supp. 3d 1128 (N.D. Ga. 2022) ......................................................... 3

*Foster v. Love*,
　522 U.S. 67 (1997) ................................................................................ 14

*Ga. Coalition for the People's Agenda v. Raffensperger*,
　Case No. 1:18-cv-04727-ELR (N.D. Ga.) ............................................ 4, 6

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
　910 F.3d 1186 (11th Cir. 2018) ............................................................ 13

*In re Georgia Senate Bill 202*,
　Case 1:21-mi-55555-JPB (N.D. Ga.) ...................................................... 6

*Indiana Democratic Party v. Rokita*,
　458 F. Supp. 2d 775 (S.D. Ind. 2006) .................................................. 16

*Johnson v. City of Atlanta*,
　107 F.4th 1292 (11th Cir. 2024) .......................................................... 13

*Kennedy v. Bruce*,
　298 F.2d 860 (5th Cir. 1962) ................................................................ 18

*Kennedy v. Lynd*,
　306 F.2d 222 (5th Cir. 1962) ..................................................... 15, 16, 17, 18

*Kirksey v. City of Jackson, Miss.*,
　663 F.2d 659 (5th Cir. 1981) ................................................................ 16

*Project Vote, Inc. v. Kemp*,
　208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................ 11, 15

*Pub. Interest Legal Found., Inc. v. Bellows*,
　92 F.4th 36 (1st Cir. 2024) .................................................................. 15

*Senne v. Vill. of Palatine, Ill.*,
　695 F.3d 597 (7th Cir. 2012) ................................................................ 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ............................................................................ 12

*United States of America v. Benson and State of Michigan*,
　Case No. 1:25-cv-01148 (W.D. Mich.) ................................................ 13

*United States of America v. Simon and State of Minnesota,*
  Case No. 0:25-cv-03761 (D. Minn.) ......................................................... 13

*United States of America v. Weber and the State of California,*
  Case No. 2:25-cv-09149 (C.D. Ca.) ......................................................... 12

*United States v. Lynd,*
  301 F.2d 818 (5th Cir. 1962) ................................................................. 17

*United States v. State of Georgia,*
  Case No. 1:06-cv-02442-CC (2006) ........................................................... 5

*United States v. Weber,*
  2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ...................
  ...........................................................................15, 16, 17, 19

**Statutes**

5 U.S.C. § 552a ..........................................................................20, 21

18 U.S.C. § 2721 .........................................................................21, 22

44 U.S.C. § 3501 ............................................................................. 21

52 U.S.C. § 10101 ............................................................................ 16

52 U.S.C. § 20501 ............................................................................. 5

52 U.S.C. § 20503 ............................................................................. 5

52 U.S.C. § 20507 ...........................................................................5, 6

52 U.S.C. § 20701 .........................................................................13, 15

52 U.S.C. § 20703 ..................................................................12, 13, 15, 19

Ga. Laws 2008, Act 706 ....................................................................... 4

Ga. Laws 2009, Act 79 ........................................................................ 4

Ga. Laws 2010, Act 632 ....................................................................... 5

Ga. Laws 2011, Act 240 ....................................................................... 5

O.C.G.A. § 15-5-110 .......................................................................... 4

O.C.G.A. § 21-2-50 ..................................................................................... 3

O.C.G.A. § 21-2-221 ................................................................................. 21

O.C.G.A. § 21-2-221.2 .............................................................................. 21

O.C.G.A. § 21-2-225 ................................................................... 4, 5, 14, 19

O.C.G.A. § 21-2-225.1 ................................................................................ 4

O.C.G.A. § 21-2-226 .................................................................................. 3

O.C.G.A. § 21-2-228 .................................................................................. 3

**Constitutional Provisions**

U.S. CONST. Art. I, Sec. 4, cl. 1 ............................................................... 14

## INTRODUCTION

Georgia gathers required private information about voters when they register to vote, including full and partial social security numbers, driver's license numbers, and full dates of birth. Officials then use that information to verify citizenship of registrants, eliminate duplicate records, remove deceased or otherwise-ineligible voters, perform list maintenance, and administer elections. Georgia conducts as much maintenance as it is permitted to do under federal law, including sending 1,006,474 list maintenance notices, cancelling 580,358 registrations, and moving 298,421 registrations to "inactive" status in 2025 alone.

After receiving a request from the DOJ, Georgia shared both a full voter file (redacting only the private information of voters as required by state law) and specific records and data regarding the list maintenance activities Georgia undertook in 2025. Declaration of C. McGowan, attached as Ex. A (McGowan Dec.), ¶¶ 21–22. Because of the confidential nature of the private information voters provide when they register to vote, state and federal laws protect that information from disclosure unless certain protections are met. Despite Georgia's full compliance in producing all legally releasable records—in addition to detailed explanations of its list maintenance processes—the DOJ wants the social security numbers, full dates of birth, and driver's license numbers of over 7 million Georgia voters without the protections required by state and federal law, claiming it is

entitled to that data—and can share it with unnamed third parties—under the Civil Rights Act (CRA). This is the DOJ's second attempt to obtain that private information, after it unsuccessfully sought the same information before the Middle District of Georgia and that court dismissed the DOJ's complaint.

There is also no basis to proceed with this case in this Court. The DOJ failed to state a claim because the CRA does not preempt the protections of Georgia law that safeguard voters' personal identifying information (PII) and the DOJ's stated purpose is inconsistent with the CRA. Even if the DOJ could overcome those flaws in its case, its demand did not meet the statutory minimums of the CRA and the DOJ is exceeding its authority under other federal law protections for private information. Without more, the DOJ is not entitled to confidential information about every Georgia voter.

For all the reasons explained below, this Court should dismiss this case. Further, this Court should set an immediate hearing on this motion. Despite the Secretary providing the entire voter list and supporting documentation regarding Georgia's list maintenance processes almost two months ago, the DOJ continues to insist that more is required, despite no federal court yet agreeing with its position in similar litigation across the country. This matter should be resolved quickly to ensure that Georgia and federal laws related to the privacy of voter information are upheld.

## FACTUAL BACKGROUND

I. **Georgia and federal laws on voter registration and list maintenance.**

   A. **Georgia law on statewide voter database.**

Georgia statutes establish specific roles for state and county officials to maintain an accurate list of registered voters. First, the Secretary of State has the duty to maintain the state's official list of registered voters in a database. *See* O.C.G.A. § 21-2-50(a)(14); *see also Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1163 (N.D. Ga. 2022). Georgia's database of registered voters is housed in the Georgia Registered Voter Information System, or GARVIS.[1] Second, county officials are responsible for verifying and entering information into GARVIS. *Id.* Every Georgia county's board of registrars is responsible for determining the eligibility of new individuals registering to vote. O.C.G.A. § 21-2-226(a). Those county boards also have the continuing duty of "examining from time to time the qualifications of each elector." O.C.G.A. § 21-2-228(a).

When voters register to vote, Georgia officials use the driver's license number to verify the citizenship of the applicant through the Department of Driver Services (DDS). *Fair Fight Action*, 634 F. Supp. 3d at 1160. Georgia also regularly

---

[1] *See* Secretary Raffensperger Announces Launch of Georgia Registered Voter Information System—GARViS, https://sos.ga.gov/news/secretary-raffensperger-announces-launch-georgia-registered-voter-information-system-garvis (Mar. 9, 2023).

conducts citizenship audits, utilizing the Department of Homeland Security's Systematic Alien Verification for Entitlements (SAVE) database to identify applicants who may have naturalized. *Id*.; *see also Ga. Coalition for the People's Agenda v. Raffensperger*, Case No. 1:18-cv-04727-ELR (N.D. Ga.), Doc. 257 at Tr. 683 (Apr. 11, 2024) (dismissing challenge to citizenship verification process).

Georgia law protects the confidential information of voters, specifically "the month and day of birth, the social security numbers, email addresses, and driver's license numbers of the electors, and the locations at which the electors applied to register to vote." O.C.G.A. § 21-2-225(b). That specific information can only be released to other government agencies (1) "if the agency is authorized to maintain such information," (2) "the information is used only to identify the elector on the receiving agency's database," (3) the information "is not disseminated further," and (4) the information "remains confidential." *Id*. Similarly, voters in family violence shelters or who have a protective order can have their address information kept confidential. O.C.G.A. § 21-2-225.1. Georgia law also provides a method for making the home addresses of state and federal judges confidential in the voter file when they request it. *See* O.C.G.A. § 15-5-110 *et seq*.[2]

---

[2] The Georgia General Assembly amended the provisions of Georgia law regarding the confidential information of voters several times in the last twenty years. *See* Ga. Laws 2008, Act 706, § 8 (adding date of birth and driver's license number as confidential); Ga. Laws 2009, Act 79, §§ 1–2 (clarifying that federal

**B.    Federal laws governing voter registration and maintenance.**

In addition to state law, Georgia's voter list is also subject to the requirements of federal law which require, but also limit, Georgia's ability to perform list maintenance. One of those laws, the National Voter Registration Act (NVRA), sets national requirements for voter registration. 52 U.S.C. § 20501(b). This includes providing opportunities to register to vote and the requirement to conduct list maintenance. 52 U.S.C. §§ 20503, 20507.

The NVRA generally requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" who have died or changed residences. 52 U.S.C. § 20507(a)(4). While requiring states to perform some list maintenance, the NVRA also places limits on how much maintenance states are allowed to perform, specifically by requiring states to maintain voters in "inactive" status for years before that voter can be removed from the rolls.[3] For

---

agencies were subject to the same requirements as state agencies to receive confidential data and providing confidentiality for individuals with protective orders); Ga. Laws 2010, Act 632, § 11 (making month and day of birth confidential); Ga. Laws 2011, Act 240, § 7 (adding e-mail addresses as confidential). As a result, O.C.G.A. § 21-2-225 was different in 2006, but even at that time, Georgia only released the confidential information of voters pursuant to a court order. *See United States v. State of Georgia*, Case No. 1:06-cv-02442-CC, Consent Order, Doc. 4 (Oct. 27, 2006).

[3] Georgia's processes for list maintenance have been found compliant with the NVRA and the Constitution by this Court in past cases. *See Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1299 n.24 (N.D. Ga. 2020); *Fair Fight*

example, a voter who moves outside of Georgia and provides a new address to the Postal Service cannot be removed solely because of that new address unless he or she confirms the move in writing. 52 U.S.C. § 20507(c)(1). If the voter does not confirm the move in writing, the voter's record must remain on the voter rolls in inactive status for two general election cycles prior to removal. 52 U.S.C. § 20507(d)(1). Further, the NVRA prohibits systematic list maintenance within 90 days of a federal primary or general election, which means that there are only narrow windows during election years when Georgia can perform list maintenance. 52 U.S.C. § 20507(c)(2)(A). In sum, state and county election officials are responsible for conducting list maintenance in accordance with state and federal laws—and none of these processes involve the federal executive branch.

While the DOJ claims it seeks to evaluate Georgia's compliance with the NVRA to remove ineligible voters, Georgia has faced continuing litigation from groups claiming it does *too much* to clean voter rolls.[4] But Georgia conducts as

--------------------

*Action, Inc. v. Raffensperger*, 1:18-CV-5391-SCJ, 2021 WL 9553856, at *16 (N.D. Ga. Mar. 31, 2021).

[4] These cases include challenges to citizenship verification, *Ga. Coalition for the People's Agenda v. Raffensperger*, Case No. 1:18-cv-04727-ELR (N.D. Ga.); no-contact removal processes, *Fair Fight Action*, 2021 WL 9553856, at *16; a process for voters to challenge eligibility, *In re Georgia Senate Bill 202*, Case 1:21-mi-55555-JPB (N.D. Ga.); and nonresidential addresses, *A. Philip Randolph Institute v. Raffensperger*, Case No. 1:24-cv-03412-SDG (N.D. Ga.).

much list maintenance as it is permitted to do under federal law. For example, in calendar year 2025, Georgia sent 1,006,474 list maintenance notices, cancelled 580,358 registrations, and moved 298,421 registrations to "inactive" status in 2025. McGowan Dec., Ex. 8 at 5. Since 2019, Georgia has issued over 4.4 million list maintenance notices. *Id*.

## II.    The Attorney General's demand for the unredacted voter file.

The DOJ first verbally requested that the Secretary's office provide a copy of Georgia's voter-registration list during a video conference on July 9, 2025. (Doc. 1 at ¶ 19). That video conference[5] was the first time the DOJ informed Georgia officials it was seeking this information, and the proposed reason for doing so was to assist the state with its list maintenance. McGowan Dec., ¶¶ 3–4. The DOJ requested that the Secretary's staff email the state's entire voter list, including full dates of birth, social security numbers, driver's license numbers, and voter histories to an attorney in the DOJ's Civil Rights Division. *Id*. at ¶ 5. The DOJ stated that it was entitled to this information under the NVRA. *Id*. at ¶ 6.

On August 7, 2025, Deputy Assistant Attorney General Michael Gates sent a letter to Secretary Raffensperger. McGowan Dec., ¶ 7, Ex. 1. The letter requested the "statewide voter registration list and information regarding Georgia's

---

[5] While the Complaint references a July 9 letter, (Doc. 1 at ¶ 19), the initial communication was by video conference. McGowan Dec., ¶¶ 3–4.

procedures for complying with" the list maintenance provisions of the NVRA. *Id*. It made the request only under the NVRA and the Help America Vote Act (HAVA) and did not mention the CRA. *Id*.

On August 14, 2025, Assistant Attorney General Harmeet Dhillon sent a clarification letter to the Secretary, specifying that the request was for all fields in the state database, including information that is confidential under Georgia law, such as full dates of birth, driver's license numbers, and Social Security numbers. McGowan Dec., ¶ 8, Ex. 2. The letter also (for the first time) referenced the CRA provisions under which this case is brought. *Id*. The letter stated one reason for the request: "to ascertain Georgia's compliance with the list maintenance requirements of the NVRA and HAVA." *Id*.

On August 15, 2025, the Secretary's General Counsel responded to the DOJ's August 7 letter, explaining that the Secretary's office was gathering the information needed and outlining the maintenance processes Georgia uses. McGowan Dec., ¶¶ 9–10, Ex. 3. When the DOJ made its request, the Secretary's office was in the middle of conducting its 2025 list-maintenance activities and wanted to be sure that process was complete before providing the voter-list information so the DOJ received the most updated list. *Id*. at ¶ 10.

The Secretary's office did not hear anything further, and so the General Counsel followed up again on October 9, 2025, indicating that the Secretary's office

was ready to transmit the requested records and requesting the link and instructions for using the DOJ's secure transfer site. McGowan Dec., ¶¶ 11–12, Ex. 4. Almost two more months went by before a new DOJ contact emailed the Secretary's general inbox and the Elections Director (but not the General Counsel), for the first time providing a draft memorandum of understanding (MOU) for the transfer of the data. McGowan Dec., ¶ 13–17, Ex. 5.

The draft MOU the DOJ provided identified the "authorities by which this information is requested by the Department of Justice" as the NVRA, HAVA, and the CRA. McGowan Dec., ¶ 15, Ex. 5. The MOU explained that the reason for requesting the list was "to test, analyze, and assess states' [voter registration lists] for proper list maintenance and compliance with federal law." *Id*. The MOU also identified the Systems of Records Notice (SORN) on which the DOJ was relying for purposes of compliance with the Privacy Act. *Id*. at 4.

The provisions of the MOU allowed the DOJ to provide Georgia's entire voter file to "a contractor with [the DOJ] who needs access to the VRL/Data information in order to perform duties related to [the DOJ's] list maintenance verification procedures." McGowan Dec., ¶ 16, MOU at 7. The MOU included an agreement that if the DOJ identified "any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns" in the voter file, then the State *must* remove those records and resubmit the data to the DOJ "to verify proper list maintenance

9

has occurred by your state." *Id*. at ¶ 17, MOU at 5. As explained above, under Georgia law, the Secretary maintains the voter file and conducts certain aspects of list maintenance, but non-party county officials are necessarily part of the list maintenance processes identified by the DOJ. *See* Facts, Sec. I.A., above. Further, the Secretary has no authority to remove records without following the requirements of federal and state law. McGowan Dec., ¶ 18.

The day after the DOJ's December 1 email, the Secretary's office responded, forwarding the prior communications and notifying the DOJ that it had been attempting to send records for several months, but had received no response. McGowan Dec., ¶ 19, Ex. 6. The Secretary's office again requested the instructions for uploading records and also explained that the review of the MOU would make the DOJ's requested timeline unreasonable. *Id*. The DOJ responded on December 3 explaining that the DOJ would only send the upload link after the MOU was signed. *Id*. at ¶ 20, Ex. 7.

On December 8, 2025, the Secretary's office responded again, explaining the processes Georgia uses to conduct list maintenance, including citizenship verification, the use of the SAVE database to verify citizenship of all voters, and the partnerships with other states and agencies Georgia uses to identify voters who might have become ineligible. McGowan Dec., ¶ 21, Ex. 8. The letter also explained the extent of Georgia's list maintenance, totaling more than 4.4 million

list maintenance notices since 2019 and cancelling more than 500,000 registrations in 2025 alone. *Id.*

The Secretary's letter also explained state law that limits disclosure of some of the fields that the DOJ requested. *Id.* As the letter also explained, under prior NVRA litigation against the Secretary, this Court clarified that, even though disclosure of certain information in the voter file was required by the NVRA, redaction of sensitive information prior to disclosure was appropriate. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344–45 (N.D. Ga. 2016).

A few minutes after the Secretary's counsel emailed the letter, the Elections Director sent the DOJ a link that utilized the Secretary's file-transfer system and included a list of county registrars, records documenting the Secretary's list maintenance activities, a list of cancelled registrations, and the registered voter list. McGowan Dec., ¶ 22, Ex. 9. These records were redacted as required by state law. *Id.* As of today, the DOJ has never provided a link to upload any voter information to its enterprise system. *Id.*

## III.    This filing and service of this litigation.

Instead of further communicating with the Secretary's office, the DOJ filed a lawsuit in the Middle District of Georgia on December 18, 2025, which that court dismissed on January 23, 2026. *See* Order Dismissing Case, *U.S. v. Raffensperger*,

Case No. 5:25-cv-00548-CAR, Doc. 49 (Jan. 23, 2026 M.D. Ga.), attached as Ex. B.

The DOJ then filed the same complaint in this district under the CRA. (Doc. 1).

## ARGUMENT AND CITATION OF AUTHORITY

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In addition to the complaint, this Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

This Court should dismiss this case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The DOJ does not have the unbounded authority through the CRA to obtain a complete copy of Georgia's voter registration database that includes voters' confidential information.

## I.    Legal standards under the CRA.

Unlike some of the 24 other cases it brought against states seeking voter files, the DOJ seeks only to require the production of Georgia's unredacted voter file under the CRA.[6] The provision of the CRA on which it relies, 52 U.S.C. § 20703

---

[6] *See*, *e.g.*, *United States of America v. Weber and the State of California*, Case No. 2:25-cv-09149 (C.D. Ca.) (counts under CRA, NVRA, and HAVA); *United States of*

covers "all records and papers which come into [the] possession" of an officer of election as part of a federal election. 52 U.S.C. § 20701. The Attorney General can send a demand "to the person having custody, possession, or control of such record or paper" and then inspect those documents "at the principal office of such custodian." 52 U.S.C. § 20703. To be a valid demand, it "shall contain [1] a statement of the basis and [2] the purpose therefor." *Id.*

## II.    The CRA does not preempt Georgia's privacy protections for voters.

The CRA does not entitle the DOJ to the PII of Georgia voters because it does not preempt the Georgia statutes that protect that information. In its demand letter, the DOJ makes the blanket statement that "[a]ny statewide prohibitions are clearly preempted by federal law," McGowan Dec., Ex. 2 at 2 n.2, referring to the statutory protections for the PII of Georgia voters.[7] But Georgia's privacy

---

*America v. Benson and State of Michigan*, Case No. 1:25-cv-01148 (W.D. Mich.) (counts under CRA, NVRA, and HAVA); *United States of America v. Simon and State of Minnesota*, Case No. 0:25-cv-03761 (D. Minn.) (counts under CRA and HAVA).

[7] This Court may "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity," *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018), without converting the motion to dismiss into a motion for summary judgment. *See also Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). As a result, the letters referenced in the Complaint are appropriate for consideration on a motion to dismiss, along with the exhibits attached to the McGowan Dec. that reflect the full correspondence with the DOJ. While not specifically referenced in the Complaint, they are central to the claims and the Secretary does not anticipate the DOJ challenging their authenticity. *Id.*

protections for voters and the CRA can operate harmoniously, so the power to request records under the CRA does not preempt those Georgia statutes — meaning the DOJ cannot obtain the unredacted records under the CRA and is only entitled to what Georgia has already provided to it.

Under Georgia law, the Secretary can only disclose confidential voter information to other government agencies when the agency is "authorized to maintain such information, the information is used only to identify the elector on the receiving agency's database, and is not disseminated further and remains confidential." O.C.G.A. § 21-2-225(b). The Secretary can only share the requested data with the DOJ if Georgia's protections for voters are preempted by the CRA. They are not.

States set the time, place, and manner of federal elections and Congress is granted the power to alter those regulations. U.S. CONST. Art. I, Sec. 4, cl. 1; *see also Brown v. Sec'y of State of Florida*, 668 F.3d 1271, 1275 (11th Cir. 2012). States have "responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (quoting *Foster v. Love*, 522 U.S. 67, 69 (1997)) (*Inter Tribal*). Thus, Georgia's laws on voter privacy are preempted only to the extent (1) Congress exercises its power under the Elections Clause and (2) the federal statutes are inconsistent with state laws. *Id*.

The CRA is likely an exercise of Congress's power under the Elections Clause. *See* P.L. 86-449, 74 Stat. 86 ("Federal Election Records"); *Inter Tribal*, 570 U.S. at 14. But there is nothing inconsistent with the CRA in redacting voters' private information prior to production when it is required by state law. 52 U.S.C. §§ 20701 and 20703 do not prohibit the redaction of private information about Georgia voters. Further, "sensitive and identifying information is private and not open to inspection by federal officials." *United States v. Weber*, 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026). That is why requests under the CRA are not for "confidential, private papers and effects" but rather for "public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962). Consistent with this approach, Georgia has already provided its full voter file to the DOJ, minus the confidential fields protected by state statutes.[8] Further, unlike the Arizona statute at issue in *Inter Tribal*, which required voters to present additional documents beyond what the federal statutory structure required for

---

[8] This Court and other courts have determined that similar silence by the NVRA about personal information allowed redaction of private information of voters. *See Project Vote*, 208 F. Supp. 3d at 1344 (NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns"); *Pub. Interest Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

federal voter-registration forms, there is nothing inconsistent with a state redacting private information before providing records in response to a request under the CRA. *Inter Tribal*, 570 U.S. at 15. As a result, Elections Clause preemption does not apply to the protections of Georgia law for confidential voter information in this instance and so Georgia has complied with the CRA.

## III.    The DOJ's stated purpose is not consistent with the CRA, so it cannot proceed with this action.

Even if the CRA did preempt Georgia statutes, the DOJ is still not using the CRA properly because the purpose of the DOJ's powers under the CRA is "to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted."[9] *Lynd*, 306 F.2d at 228. But it is "well-settled law [that] § 1971 was enacted pursuant to the Fifteenth Amendment for the purpose of eliminating *racial discrimination* in voting requirements." *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006) (emphasis added) (collecting cases), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *see also Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009) ("only racially motivated deprivations of rights are actionable" (citing *Kirksey v. City of Jackson, Miss.*, 663 F.2d 659, 664–65 (5th Cir. 1981)); *see also Weber*, 2026 WL 118807, at *8 ("The purpose of Title III is to detect voting-related racial

---

[9] Former 42 U.S.C. § 1971 was renumbered as 52 U.S.C. § 10101.

16

discrimination."). That is why the CRA applies to a demand for voting records when "there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights." *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962); *see also Lynd*, 306 F.2d at 226 (noting no need for specification "of persons thought to have received *discriminatory* treatment" (emphasis added)). The DOJ does not claim that is happening in Georgia and thus its request is beyond the scope of the CRA.

The DOJ makes no allegations that its request is for purposes of bringing an action under the CRA—instead it admits it seeks to review Georgia's compliance with different statutes, the NVRA and HAVA. *See* McGowan Dec., Ex. 2 at 2. But this makes little sense because neither statute existed when the CRA became law and both the NVRA and HAVA have their own enforcement mechanisms, which again "points to the DOJ's stated purpose being outside of the scope of what Congress intended Title III to be used for." *Weber*, 2026 WL 118807, at *9. Because the DOJ is not seeking to address any issues related to racial discrimination, its request is also invalid because it is attempting to use the CRA for purposes other than enforcing its protections against racial discrimination.

## IV. The DOJ's demand letter does not meet the statutory requirements under the CRA.

Another problem with the DOJ's reliance on the CRA is that its demand does not comply with the statute because it does not contain a statement of the

basis and the purpose. The DOJ identifies one letter as a demand for purposes of its CRA claim, which is the August 14 letter. (Doc. 1 at ¶ 26). The DOJ states that the purpose of its demand is to ascertain Georgia's compliance with the list maintenance requirements of the NVRA and HAVA. McGowan Dec., Ex. 2 at 2. But, as described above, there is no basis to think that Georgia is not complying with those list maintenance requirements. And the records that Georgia already sent the DOJ show that Georgia conducts list maintenance to the fullest extent allowed by the NVRA and HAVA. The DOJ does not need Georgia voters' PII to ascertain that fact, which makes the lack of the required basis in the demand particularly telling.

While this Court cannot inquire into the "factual support for, or the sufficiency of" the basis and purpose, *Lynd*, 306 F.2d at 226, it must require the DOJ to comply with the statute to provide both the basis and purpose of its request prior to it being a valid request under the CRA. *See also Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (finding "the request of the Attorney General was sufficient" under the CRA). Further, the CRA "was not passed as a tool for NVRA compliance" or for HAVA compliance. *Weber*, 2026 WL 118807, at *9. And when there is no "explanation for why [the DOJ] believed the NVRA was violated in its

letter," *id.*, the DOJ has not yet complied with the CRA in the demand it made on the Secretary and this Court should dismiss the Complaint.[10]

## V.    The DOJ's demand exceeds its authority under other statutory provisions.

Under Georgia law, which is not preempted by the CRA in this instance, the Secretary can only disclose confidential voter information to other government agencies when the agency is "authorized to maintain such information, the information is used only to identify the elector on the receiving agency's database, and is not disseminated further and remains confidential." O.C.G.A. § 21-2-225(b). The DOJ's demand does not satisfy any of those prerequisites because under federal law, the DOJ is not legally authorized to maintain confidential information about voters until it complies with at least three other laws: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act (DPPA). *See also Weber*, 2026 WL 118807, at *17 (finding identical violations). The DOJ has not done so, and is thus separately prohibited from receiving the confidential information of Georgia voters.[11]

―――――――――――――――

[10] Even if the DOJ's demand was proper, it is only entitled to "inspection, reproduction, and copying at the principal office" of the Secretary, not electronic transmittal of the database. 52 U.S.C. § 20703.

[11] While normally affirmative defenses are not considered at the motion-to-dismiss stage, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery

## A.    The DOJ's request violates the Privacy Act.

Congress adopted the Privacy Act to "provide certain safeguards," including "that adequate guards are provided to prevent misuse" of private information. P.L. 93–579 (S 3418) 88 Stat 1896 § 2(B)(4). That requires federal agencies to follow procedures before they can "maintain, collect, use, or disseminate" any records. 5 U.S.C. § 552a(e)(f).

The unredacted voter list the DOJ seeks is a "record" for purposes of the Privacy Act because it includes records of individuals and "identifying number[s]." *Id*. at (a)(4). And because the DOJ seeks to hold the information about Georgia voters, it is establishing a "system of records." *Id*. at (a)(5). As a result, the DOJ must publish a System of Records Notice (SORN) in the Federal Register that covers the requested information. *Id*. at (e)(4).

The DOJ never identifies a SORN in its Complaint. But the MOU sent to the Secretary references a SORN, specifically JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (August 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). McGowan Dec., Ex. 5 (MOU) at 4. That SORN identifies the categories of individuals covered as including victims, witnesses, and others in

---

on the claim.'" *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).

cases involving the Civil Rights Division. *Id*. But that SORN does not include the maintenance of voter records unrelated to litigation, nor can it relate to an investigation if there is no question about the enforcement of the CRA against Georgia. As a result, the request does not comply with the DOJ's duties under the Privacy Act. 5 U.S.C. § 552a(e)(4).

**B.    The DOJ's request violates the E-Government Act.**

In addition to the Privacy Act, the E-Government Act requires federal agencies to undertake a privacy impact assessment (PIA) before "initiating a new collection of information" which includes private information of more than 10 people. 44 U.S.C. § 3501 note (E-Government Act of 2002, § 208(b)(1)(A)(ii)(II)). An agency is required to prepare a PIA if "it plans to collect information." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 380 (D.C. Cir. 2017). Despite this requirement, the DOJ has not indicated it undertook a PIA prior to requesting Georgia's voter data.

**C.    The DOJ's request violates the Driver Privacy Protection Act (DPPA).**

Finally, the DOJ's request violates the DPPA. The DPPA generally prohibits the disclosure of personal information obtained in connection with a "motor vehicle record." 18 U.S.C. § 2721(a). Georgia's voter-registration database regularly receives information from the DDS to register and update voter information. *See* O.C.G.A. §§ 21-2-221(e), (h); 21-2-221.2. This is permitted by the

DPPA, which allows uses of records as part of government agencies carrying out their functions. 18 U.S.C. § 2721(b)(1). But the use of the records matters, because the "particular piece of disclosed information" must be used for "effecting a particular purpose exempted by the Act." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012).

Here, the DOJ's only stated purpose in its demand letters is to determine Georgia's compliance with the NVRA and HAVA, but none of the information requested is necessary for that purpose. Georgia extensively conducts list maintenance—to the point that it is regularly sued by groups claiming it is conducting too much list maintenance. *See* Facts, Sec. I.B., *above*. The DOJ does not need the confidential information of Georgia voters to assess whether Georgia is conducting list maintenance. The redacted data that Georgia has already sent is more than sufficient for that purpose.

## CONCLUSION

Georgia performs as much list maintenance as is permitted by federal law and Georgia readily provided its entire redacted voter file to the DOJ. The DOJ has not identified any basis for believing that Georgia is not fully complying with federal law. And Georgia law protects the social security number, driver's license number, and month and day of birth of Georgia voters. Nothing in the CRA requires Georgia to provide unredacted records after a demand by the DOJ and

Georgia's state-law privacy protections are not preempted by the CRA. This Court should dismiss this case.

Respectfully submitted this 5th day of February, 2026.

/s/ Bryan P. Tyson
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 700
Atlanta, Georgia 30326
678.370.4377 (phone)

*Counsel for Defendant Secretary of State Brad Raffensperger*

23

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing

brief was prepared in Book Antiqua 13, a font and type selection approved by the

Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson