IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his Official Capacity as Secretary of State for the State of Georgia,<br><br>Defendant. | Case Number: 1:26-cv-00485-ELR |

**DECLARATION OF ERIC NEFF IN SUPPORT OF THE UNITED STATES' MOTION TO COMPEL AND IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS (DOCS. 16, 22, 23)**

**DECLARATION**

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in support of the United States' motion to compel production of election records pursuant to the Civil Rights Act codified at 52 U.S.C. § 20701, *et seq*. (Doc. 26) and in opposition to Defendants' motions to dismiss (Docs. 16, 22, 23).

2. As stated in the correspondence dated August 7, 2025 and August 14, 2025, attached as Exhibits 1 and 2 to this Declaration, the United States has requested the federal election records that are the subject of this litigation for the limited purpose of evaluating Georgia's compliance with the list maintenance provisions of the Help America Vote Act ("HAVA") and the National Voter

Registration Act ("NVRA"), and, if appropriate, to bring an enforcement action. Secretary Raffensperger's response letter dated December 8, 2025, is attached hereto as Exhibit 3.

3. HAVA requires that "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number or if that is unavailable, the last four digits of the Social Security number. 52 U.S.C. § 21083(a)(5)(A)(i). That information is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections.

4. To ascertain whether a jurisdiction engages in practices that violate federal law (whether HAVA, the NVRA, the Voting Rights Act or any other one), the Attorney General needs to examine both applications to register to vote *and* the final voting rolls, including the electronic statewide voter registration list ("SVRL"), so as to assure herself that the applications are being properly processed and that reasonable list maintenance efforts have been practiced.

5. Contrary to what Defendant-Intervenors contend through third-party hearsay, the records the United States is seeking to compel under the CRA are not intended "to create a nationwide voter list, an unprecedented scheme not authorized by any source of law." Common Cause's Mot., Doc. 22-1 at 5-8; *see also* BVMF's Mot., Doc. 23-1 at 5-8 (arguing the federal government "intends to share the voter lists across the federal government and use the data for immigration enforcement, to push for voter purges, and to cast doubt on the legitimacy of U.S. elections."). Rather, the records sought from Georgia are necessary to perform an individualized assessment of the State's efforts to comply with HAVA and the NVRA.

6. When the Civil Rights Division performs this individualized assessment, the State's SVRL is compartmentalized and maintained by the Civil

Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records.

7. The United States previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the Civil Rights Act ("CRA").

8. For example, in two of those CRA matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and last four digits of the registrant's social security number, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.

9. On October 12, 2006, the United States filed its Complaint against Secretary Cox and the State of Georgia, Case No. 1:06-cv-02442-CC in the United States District Court for the Northern District of Georgia (the "2006 Action"). A true and accurate copy of the Georgia complaint is attached as Exhibit 4.

10. The parties to the 2006 Action simultaneously filed a Joint Motion for Entry of Consent Judgment and Decree which stated *inter alia*, "Defendants admit that by declining to disclose Social Security Numbers of Georgia voters to Plaintiff that they have not complied with 42 U.S.C. § 1974b [transferred to 52 U.S.C. § 20701]." *See* Joint Motion attached herein as Exhibit 5.

11. The Court entered a consent decree in the Georgia case requiring the state to produce its SVRL to the United States. A true and accurate copy of the Georgia consent decree is attached as Exhibit 6.

12. The Texas matter was resolved by a Memorandum of Understanding ("MOU") dated May 13, 2008, which required Texas to produce its SVRL to the United States. A true and accurate copy of the Texas MOU is attached as Exhibit 7.

13. A true and accurate copy of the Opinion issued in *United States v. Benson*, Case No. 1:25-cv-01148-HYJ-PJG (W.D. Mich. Feb. 10, 2026), is attached as Exhibit 8.

14. A true and accurate copy of the Order issued in *United States v. Oregon*, Case No. 6:25-cv-01666-MTK (D. Or. Feb. 5, 2026), is attached as Exhibit 9.

15. A true and accurate copy of the Order issued in *United States v. Weber*, Case No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026), is attached as Exhibit 10.

16. A true and accurate copy of cited excerpts from report by the National Commission on Federal Election Reform (the Ford-Carter Commission), entitled "To Assure Pride and Confidence in the Electoral Process (Aug. 2021)," is attached as Exhibit 11.

17. Recent enforcement efforts by the Attorney General demonstrate the need for federal scrutiny. In 2025, North Carolina election officials admitted that the state "maintained and used a HAVA List that includes records that do not comply with the requirements for Federal elections under Section 303(a)(5)." *United States v. N. Carolina Bd. of Elections*, Consent J. & Order at 4 (E.D.N.C. Sept. 8, 2025). A true and accurate copy of the North Carolina Consent Judgment and Order is attached as Exhibit 12.

18. As a result of the Attorney General's enforcement action, North Carolina has reduced the number of voter records missing an identification number under HAVA from 103,329 to 70,709. *See N. Carolina Bd. of Elections*, Defs.' 2d Status R. at 2 (E.D.N.C. Jan. 30, 2026). A true and accurate copy of the Second Status Report from the North Carolina litigation is attached as Exhibit 13.

19. A true and accurate copy of the Opinion issued in *United States v. Raffensperger*, case no. 5:25-cv-00548-CAR (M.D. Ga. Jan. 23, 2026), is attached as Exhibit 14.

20.     The United States has reached out to states, including Georgia, to address any reasonable privacy concerns without impeding the Attorney General's authority to enforce federal law.

21.     To that end, the United States has offered states an MOU memorializing these requirements. As of February 17, 2026, thirteen states have provided their SVRLs without any MOU. Two states have agreed to provide their SVRL under the terms of the MOU. Three other states have indicated their intention to provide the SVRLs in the near future.

22.     An Initial Privacy Assessment (IPA) Determination was issued on October 12, 2012, showing that no Privacy Impact Assessment is required for the Justice Consolidated Office Network (JCON) system where personal identifying information associated with the United States' CRA demand is stored.

I declare under the penalty of perjury that the above statements are true and correct. Executed on February 19, 2026.

Dated: February 19, 2026, at Washington, DC.

/s/ Eric Neff
Eric Neff