# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THE UNITED STATES OF AMERICA,

    *Plaintiff,*

       v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia,

    *Defendant.*

Civil Action No. 1:26-cv-00485-ELR

# DEFENDANT RAFFENSPERGER'S REPLY
# IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .......................................................................................... 1

ARGUMENT AND CITATION OF AUTHORITY ........................................ 2

I.    The Federal Rules of Civil Procedure apply to this action or it is an enforcement of an administrative subpoena. ..................................... 2

A.    The Federal Rules apply to this proceeding. ................................... 2

B.    The DOJ's claims still fail if this Court applies the rules governing administrative subpoenas. ............................................... 4

II.    The CRA may only be utilized for race-based discrimination in voting. ........................................................................................ 6

III.    Defendants can challenge whether the DOJ provided any basis for its demand. ........................................................................................ 7

IV.    The DOJ never explains how Georgia privacy protections are inconsistent with the CRA for purposes of Elections Clause preemption. ...................................................................................... 9

V.    The DOJ does not consistently apply federal privacy laws. ................. 13

CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Coleman v. Kennedy*,
  313 F.2d 867 (5th Cir. 1963) ...................................................................7, 9

*EEOC v. Tire Kingdom, Inc.*,
  80 F.3d 449 (11th Cir. 1996) ......................................................................5

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) ..................................................................15

*In re Coleman*,
  208 F. Supp. 199 (S.D. Miss. 1962) ...........................................................8

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ...........................................................2, 6, 8, 11

*Laney v. BBB Logistics, Inc.*,
  1:18-CV-02071-SDG, 2020 WL 13573842 (N.D. Ga. May 20, 2020) ........................1

*Marbury v. Madison*,
  5 U.S. 137 (1803) ......................................................................................9

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016).......................................................10

*Pub. Interest Legal Found., Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024)........................................................................10

*Pub. Interest Legal Found., Inc. v. Matthews*,
  589 F. Supp. 3d 932 (C.D. Ill. 2022).........................................................10

*Sec. & Exch. Comm'n v. Marin*,
  982 F.3d 1341 (11th Cir. 2020) ..............................................................5, 9

*True the Vote v. Hosemann*,
  43 F. Supp. 3d 693 (S.D. Miss. 2014)........................................................10

*U.S. v. Centennial Builders*,
  747 F.2d 678 (11th Cir. 1984) ....................................................................5

*U.S. v. Lynd*,
    349 F.2d 790 (5th Cir. 1965) ................................................................... 6

*U.S. v. Powell*,
    379 U.S. 48 (1964) ................................................................... 3, 4, 5, 9

*United States v. Benson*,
    1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ................................. 3, 4

*United States v. Oregon*,
    6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................................. 3

*United States v. Weber*,
    2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .................. 3

**Statutes**

26 U.S.C. § 7604 ................................................................................. 3

52 U.S.C. § 20507 ............................................................................... 10

52 U.S.C. § 20510 ............................................................................... 7

52 U.S.C. § 20701 ............................................................................... 9, 10

52 U.S.C. § 20703 ............................................................................... 13

52 U.S.C. § 20705 ............................................................................... 3

52 U.S.C. § 21111 ............................................................................... 7

O.C.G.A. § 21-2-226 ............................................................................ 13

**Treatises**

A. Scalia & B. Garner, Reading Law (1st ed. 2012) .................................... 12

*Basis*,
    *American Heritage Dictionary of the English Language* (5th ed. 2022) ...................... 7

*Basis*,
    *Black's Law Dictionary* (4th ed. 1968) ...................................................... 7

## INTRODUCTION

Despite the DOJ's lengthy effort[1] to justify its actions, it provides no basis for this Court to exercise jurisdiction over its request that Georgia produce its unredacted voter file pursuant to the Civil Rights Act (CRA). This Court should grant the Secretary's motion to dismiss.

On the jurisdictional issues, the DOJ is wrong for at least two reasons. First, the Federal Rules of Civil Procedure govern this action and the DOJ ignores more recent precedent on this point. But even if this Court treats the case as enforcement of an administrative subpoena, the DOJ still has not shown any basis to proceed with this case because it cannot demonstrate the required elements are present. Second, as the DOJ acknowledges, the CRA was created to address discrimination

---

[1] Without leave of court or consulting counsel for the Secretary, the DOJ filed a 45-page brief, which is 20 pages more than is permitted by L.R. 7.1(D). It is unclear which portions of the DOJ's brief respond to the Secretary's motion to dismiss and which portions support the DOJ's motion for production. The DOJ's only attempt to explain is that its arguments are "duplicative and overlapping," Doc. 31-1 at 9, demonstrating that DOJ used 45 pages to respond to a motion to dismiss without leave of court. Strangely, the DOJ also certified the font of its brief under L.R. 7.1(D) without referencing that rule's 25-page limit. Doc. 31-1 at 55.

While this Court has the discretion to strike the DOJ's brief in its entirety, it also "is under no duty to consider [the] response beyond page 25" due to this violation of the Local Rules. *Laney v. BBB Logistics, Inc.*, 1:18-CV-02071-SDG, 2020 WL 13573842, at *2 (N.D. Ga. May 20, 2020). In the interest of judicial economy, the Secretary provides a reply in support of his motion to dismiss within the 15 pages permitted by the Local Rules. The Secretary will respond separately to an additional issue raised by the motion to compel.

in voting and, unless the DOJ asserts some basis for discrimination, it cannot utilize the CRA.

On the merits of its claim, the DOJ still does not show any basis for proceeding with this case. The Secretary has already provided a copy of Georgia's redacted voter list, which is all the CRA requires because the CRA does not preempt Georgia's privacy protections. The DOJ does not even engage on that issue. Further, the Secretary can challenge *whether* the DOJ ever stated any factual basis for its request, which it still has not. And the DOJ tries to have it both ways on federal privacy laws, saying they apply but that no further action is necessary. This Court should do what each federal court facing similar cases from the DOJ has done so far—grant the Secretary's motion and end this case.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    The Federal Rules of Civil Procedure apply to this action or it is an enforcement of an administrative subpoena.**

### A.    The Federal Rules apply to this proceeding.

The DOJ begins by claiming that the Federal Rules cannot apply to this action because it is a "special statutory proceeding." Doc. 31-1 at 19[2] (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). While it criticizes the other

---

[2] All page-number citations for documents filed on the docket are to the blue ECF numbers at the top of each page.

district courts that have reached this question, the DOJ cites repeatedly to *Powell*, which explains a different standard than the one the DOJ seeks to use. Doc. 31-1 at 18 n.4, 21–23 (citing *U.S. v. Powell*, 379 U.S. 48 (1964)). In *Powell*, the U.S. Supreme Court considered a statute granting district courts "jurisdiction by appropriate process to compel" the production of documents after a demand by the IRS, 26 U.S.C. § 7604, which is identical to the language of the CRA that district courts "shall have jurisdiction by appropriate process to compel the production" after a demand from the DOJ, 52 U.S.C. § 20705. The Supreme Court explained that "[b]ecause § 7604(a) contains *no provision specifying the procedure* to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Powell*, 379 U.S. at 58 n.18 (emphasis added).[3]

The DOJ also completely misses the point that it filed "a traditional civil complaint, not a petition for summary enforcement." *United States v. Benson*, 1:25-CV-1148, 2026 WL 362789, at *7 (W.D. Mich. Feb. 10, 2026); *see* Doc. 1. That matters because proceeding with a complaint means it is not proceeding as a petition in a

---

[3] As the DOJ correctly notes, two district courts have determined that *Powell* overruled *Lynd's* conclusions about the application of the Federal Rules. Doc. 31-1 at 20 (citing *United States v. Weber*, 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, 6:25-CV-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026)).

special statutory proceeding, but rather as a "traditional civil complaint" that is governed by the Federal Rules. *Id.*

While the DOJ seeks to distinguish *Powell* by pointing out the different process governing the agency in the Internal Revenue Code, Doc. 31-1 at 22, that issue does not address this Court's jurisdiction. At root, the most DOJ can do is point to one Fifth Circuit case decided more than sixty years ago calling a CRA proceeding a "special statutory proceeding," while discounting a Supreme Court case decided two years later, which explained specifically that claims under identical statutory language were governed by the Federal Rules. The DOJ wishes this Court to interpret the "special statutory proceeding" language in a way that ensures there is no "process for officers of election to object to Title III proceedings being initiated against them." Doc. 31-1 at 22. This Court should decline that invitation given the specific direction in *Powell*.

### B.    The DOJ's claims still fail if this Court applies the rules governing administrative subpoenas.

Even if this Court does not believe that the normal procedural rules apply to this case, at the very least it must "construe[] a request for records under the CRA as a form of administrative subpoena." *Benson*, 2026 WL 362789, at *7. In those situations, the Federal Rules "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute." Fed. R. Civ. P. 81(a)(5). And while this Court's

role is "limited" in administrative subpoena proceedings, it is not nearly as cursory as the DOJ suggests. *Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341, 1352 (11th Cir. 2020) (quoting *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996)). Instead, this Court is to review and apply a four-factor analysis to consider the validity of an administrative subpoena: "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [agency's] possession, and [4] that the administrative steps required ... have been followed ...." *Marin*, 982 F.3d at 1352 (quoting *Powell*, 379 U.S. at 57–58).

Under this process, the initial burden is on the government to "make out a prima facie showing that the *Powell* criteria are met." *Id*. at 1352. The burden then shifts to the recipient of the subpoena to disprove any one of the four *Powell* criteria or "demonstrate that judicial enforcement should be denied on the ground that it would be an abuse of the court's process." *Id*. (quoting *U.S. v. Centennial Builders*, 747 F.2d 678, 680 (11th Cir. 1984) (quotations omitted)). The DOJ cannot make its initial showing nor has it pleaded the four factors in its complaint.

At best, only one of the four factors is present. While the DOJ may have a legitimate purpose to investigate compliance with the NVRA and HAVA, its inquiry is not relevant to that purpose, because the DOJ has not explained or provided any information about why unredacted records of Georgia voters are

required, especially in the face of the documents and evidence provided. Further, the DOJ already has the entire redacted voter list in its possession, which is all that is permitted because the CRA does not preempt the privacy protections of Georgia law. Doc. 16-1 at 19–22. Finally, the DOJ has not followed the necessary administrative steps because it still has not stated a basis for its request as required by the CRA—and that must be more than pointing to a statute. Doc. 16-1 at 23–25; Sec. III below. As a result, the DOJ has not pleaded the necessary elements to meet the test in *Powell* and the case should be dismissed under Fed. R. Civ. P. 12(b)(6) or under the administrative subpoena standard.

## II.    The CRA may only be utilized for race-based discrimination in voting.

The DOJ is correct that the text of the CRA does not mention race discrimination (apart from being part of the *Civil Rights* Act). But while relying extensively on *Lynd* in its brief, the DOJ runs away from its statement about the purpose of the CRA provision it invokes here: "[i]ts purpose is to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted." *Lynd*, 306 F.2d at 228. And the whole purpose of the various orders to Registrar Lynd was to "be an inducement to eliminate any vestige of discriminatory practices." *U.S. v. Lynd*, 349 F.2d 790, 792 (5th Cir. 1965).

Not only is the prior Fifth Circuit's statements about the purpose binding on this Court, *see also* Doc. 16-1 at 22–23 (collecting cases), the purpose is perfectly

consistent with the text. If the Attorney General wishes to enforce the provisions of the NVRA and HAVA, she has specific statutory power to do so. 52 U.S.C. § 20510 (NVRA); 52 U.S.C. § 21111 (HAVA).

At root, the DOJ cannot point to any case where a state was required to produce records under the CRA over objection that was unrelated to racial discrimination. It asks this Court to be the first in the nation (and apparently in history) to do so. This Court should decline that invitation.

## III. Defendants can challenge whether the DOJ provided any basis for its demand.

In responding to whether it provided the basis for its request, the DOJ admits that its demand letter included only a reference to statutes and not a *factual* basis for why it believed there was any statutory violation. Doc. 31-1 at 31–34. The correct definition of "basis" includes items like "groundwork," "support," and "foundation." *Basis, Black's Law Dictionary* (4th ed. 1968). Common usage also defines a basis as "[a] fact or circumstance on which something is established." *Basis, American Heritage Dictionary of the English Language* (5th ed. 2022).

Further, the DOJ has consistently applied the term "basis" in the CRA to the factual reasons for the request. In the historical cases applying that provision, the DOJ explained its basis as:

- "investigating possible *violations* of a Federal statute" *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) *(Coleman II)* (emphasis added);

- "information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Lynd*, 306 F.2d at 231 n.6;

- "information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction." *In re Coleman*, 208 F. Supp. 199, 199 (S.D. Miss. 1962).

Thus, in each case where federal courts enforced the provisions of the CRA, the DOJ included far more than a simple reference to a statute—it put the jurisdiction on notice of the facts that led to its request as the statute requires. That is what is missing in the demand here. This Court should require the DOJ to follow the provisions of the CRA when making the demand on which it seeks to proceed.

Instead of trying to engage with the lack of any factual basis for its demand, the DOJ pivots, making a sweeping claim—that as long as it *says* it included a basis and a purpose in its letter, no one—not this Court nor any other entity—can question whether it did so. Doc. 31-1 at 33–34. Aside from bestowing on itself an unchecked and extraconstitutional power over state election records, the DOJ's purported approach is unmoored from the administrative subpoena process that would govern if the DOJ is correct that the Federal Rules are inapplicable here, as discussed above.

Under that structure, it is still appropriate for the Court to inquire into the *Powell* factors, that include whether "the administrative steps required … have

been followed." *Marin*, 982 F.3d at 1352 (quoting *Powell*, 379 U.S. at 57–58). Thus, it is appropriate for this Court—even if it does not inquire into the "reasons for [her] demand," Doc. 31-1 at 33 (quoting *Coleman II*, 313 F.2d at 868) or the factual support for the demand—to determine *whether* the DOJ ever stated a basis for its demand.[4]

As a result, this Court may inquire into whether the DOJ has complied with the CRA under the Federal Rules or under the administrative subpoena process. It should do so and dismiss this case for the DOJ's failure to comply with the demand language of the CRA.

## IV. The DOJ never explains how Georgia privacy protections are inconsistent with the CRA for purposes of Elections Clause preemption.

In claiming the CRA requires the production of non-public records, the DOJ focuses on the "all records and papers" language in the statute. Doc. 31-1 at 35 (quoting 52 U.S.C. § 20701). But it then breezes past the Secretary's preemption arguments, never even attempting to reconcile the language of the CRA with the privacy protections for Georgia voters or to apply Elections Clause preemption. Without some basis for concluding that the CRA preempts Georgia's statutory

---

[4] Whether the inquiry is authorized is a question of statutory interpretation that this Court is constitutionally empowered to decide. As it has long been said, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. 137, 177 (1803).

protections for private voter information, the DOJ cannot claim it is entitled to more than what it already has—a full voter list with voters' confidential information redacted.

A comparison to another statute is helpful to demonstrate how a statutory reference to "all records" does not conflict with state protections for private voter information. Under the NVRA, states are required to make available for public inspection "all records" about programs related to official lists of registered voters. 52 U.S.C. § 20507(i)(1). That language is very similar to the "all records and papers" language of the CRA. 52 U.S.C. § 20701.

Courts interpreting the NVRA provision under the Elections Clause have found there is no inconsistency—which is what matters for Elections Clause preemption, *see* Doc. 16-1 at 20—between the "all records" text of the NVRA and the protections of state law for voter privacy, because "it is illogical that in enacting the NVRA, Congress intended to erode Federal and State law protecting against the disclosure of private, personal information." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016); *see also Pub. Interest Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information"); *Pub. Interest Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (same); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 738 (S.D. Miss. 2014) (same).

The lack of any conflict between requiring the disclosure of "all records" under the NVRA while redacting sensitive information applies equally to the CRA. For example, while quoting other portions of the *Lynd* opinion, the DOJ also ignores the Fifth Circuit's explanation that, in the context of the CRA, "we are not discussing *confidential*, private papers and effects. We are, rather dealing with *public records* which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen." *Lynd*, 306 F.2d at 231 (emphasis added).[5] That demonstrates that the consistency between the Georgia privacy statutes and the CRA. Because the CRA only reaches "public records" and its "all records" provision can be read consistently with the privacy protections of Georgia law, Georgia acted consistently with the CRA when it provided only the redacted list to the DOJ. There is nothing more the CRA requires Georgia to do.

Facing this result, the DOJ falls back to an attempted absurdity-doctrine argument,[6] focusing on two situations from nearly 20 years ago where it obtained

---

[5] The DOJ spends several pages disagreeing with the Michigan district court's conclusion that voter lists are not included in the scope of the CRA. *See* Doc. 31-1 at 36–41. But its arguments only emphasize the importance of consistently applying both the provisions of the NVRA and the CRA to protect the confidential information of voters.

[6] How the DOJ argues for the application of the absurdity doctrine makes little sense, because the doctrine allows provisions to be "either disregarded or

statewide voter lists under the CRA. Doc. 31-1 at 41. But it misses several important points when doing so. First, the Georgia consent decree still required litigation and included specific protections for the private information of Georgia voters.[7] In other words, Georgia did not agree to provide its list without those additional protections even after a request from the DOJ. Georgia law has also changed significantly since that time, including making additional fields confidential and imposing requirements on all governments regarding confidential information. *See* Doc. 16-1 at 10–11 n.2. Second, the Texas MOU also included additional privacy protections beyond federal statutes and included a requirement to destroy the information after the DOJ completed its use. Doc. 31-9 at ¶¶ 3–4. As a result, neither example demonstrates any inconsistency between the CRA and protecting private voter information.

---

judicially corrected as an error . . . if failing to do so would result in a disposition that no reasonable person could approve." A. Scalia & B. Garner, READING LAW at 234 (1st ed. 2012). Interpreting the CRA to include protections for private voter information is also not subject to either of the limitations of the doctrine, because such a reading is neither "a disposition no reasonable person could intend" nor is it "reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error." *Id*. at 237–38.

[7] The DOJ states it will abide by the limitations on disclosure under the CRA and that the records can be produced "consistent with these federal protections through a protective order." Doc. 31-1 at 44. But the MOU the DOJ provided, *see* Doc. 31-1 at 44 n.11, is not sufficient because it seeks to impose duties on Georgia far beyond the statute and authorizes disclosure to third parties. *See* Doc. 16-2, ¶¶ 14–18.

Strangely, the DOJ then says it needs to examine voter-registration applications, Doc. 31-1 at 41–42, but it has not requested that information from the Secretary. *See* Doc. 31-4 at 2. And in any event, those applications are processed by county officials, not the Secretary of State. *See* O.C.G.A. § 21-2-226.

Finally, the DOJ claims it is entitled to reproduction and copying of the voter file. Doc. 31-1 at 46. But it glosses over the actual statutory language, which requires that the records "be made available for inspection, reproduction, and copying *at the principal office of such custodian* by the Attorney General or [her] representative." 52 U.S.C. § 20703. The statute authorizes the representative of the DOJ to inspect, reproduce, and copy at the Secretary's office—it does not impose a general duty for the Secretary's staff to do that work for the DOJ.

## V.     The DOJ does not consistently apply federal privacy laws.

In response to the Secretary's motion to dismiss, the DOJ agrees that the Privacy Act applies, but disagrees with the application of other federal privacy statutes. The DOJ's initial statement that Section 304 of the CRA applies (Doc. 31-1 at 46–47) is confusing at best, given its request that Georgia agree to an MOU that allowed much broader disclosure than that section. *Compare* Doc. 16-2 at ¶¶ 14–18 (authorizing disclosure to third parties) *with* 52 U.S.C. § 20704 (no disclosure to any entity but Congress or in court proceedings).

In discussing the Privacy Act,[8] the DOJ accuses Georgia of being part of "a coordinated effort to impede federal enforcement" of HAVA and the NVRA. Doc. 31-1 at 48–49. But as explained in earlier briefing, Georgia provided extensive documents about its list-maintenance efforts. Further, Georgia is required to keep confidential voter information confidential by its statutes and there is no federal law that preempts that obligation.

The challenge with confidential voter information is that once it is disclosed, there is no way to "un-ring" the bell. The DOJ says it is complying with the Privacy Act, but its representations to this Court are different from the MOU it sought from Georgia. Given the lack of any preemption of Georgia statutes and the issues raised by the DOJ's proposal to Georgia, this Court must ensure the confidential information of Georgia voters remains protected as required by Georgia law.

Regarding the E-Government Act, the DOJ claims it is "not initiating a new process whereby it is contacting individuals for information" within the scope of that Act. Doc. 31-1 at 50. But it is demanding the private information on more than eight million registered voters, which is the "personal information" of voters. The

_____

[8] The DOJ refers to a privacy policy that is outlined in a non-existent footnote 16. Doc. 31-1 at 48. That policy appears to be https://civilrights.justice.gov/privacy-policy and it generally refers to the Civil Rights Act of 1960 as the last bullet on the page. It is notable that the DOJ does not identify any of its SORNs as referencing the Civil Rights Act but must cite to its website.

DOJ stands on the jurisdictional dismissal of *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 380 (D.C. Cir. 2017) but does not disagree with this reality.

Regarding the Driver Privacy Protection Act, the DOJ ignores the source of information for much of Georgia's voter-registration information and attempts to expand its role to claim access to the unredacted data. But the exception on which it relies cannot be interpreted nearly as broadly, especially when there is no factual basis provided to believe that Georgia is violating any federal statutes.

## CONCLUSION

The DOJ does not provide any basis for this Court to exercise jurisdiction. Under any standard, the DOJ has failed to state a valid claim under the CRA, meaning this Court should dismiss this case on jurisdiction alone.

But even on the merits, the DOJ's claim fails. At root, there is no conflict between the CRA and the protections of Georgia law and the DOJ already has everything to which it is entitled under the CRA—a redacted copy of Georgia's voter file—even if the DOJ's demand complied with the CRA, which it does not. This Court should dismiss this case.

15

Respectfully submitted this 5th day of March, 2026.

_/s/ Bryan P. Tyson_
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 700
Atlanta, Georgia 30326
678.370.4377 (phone)

_Counsel for Defendant Secretary of State Brad Raffensperger_

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing brief was prepared in Book Antiqua 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson