# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia,

    *Defendant*,

BLACK VOTERS MATTER FUND, COMMUNICATION WORKERS OF AMERICA LOCAL 3204, and COMMUNICATION WORKERS OF AMERICA RETIRED MEMBERS COUNCIL,

    *and*

COMMON CAUSE and ROSARIO PALACIOS,

    *Intervenor-Defendants*.

Case No. 1:26-cv-00485-ELR

**INTERVENORS BLACK VOTERS MATTER FUND, CWA LOCAL 3204, AND CWA LOCAL 3204 RETIRED MEMBERS COUNCIL'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ................................................................................................... 2

I.      The motion to dismiss is appropriate under the Federal Rules. ...................... 2

II.     DOJ did not state any "basis" or a proper "purpose" for its demand. ............. 6

        A.      DOJ did not provide any statement of the basis for its demand. .......... 7

        B.      DOJ did not provide a legally sufficient purpose for its demand. ........ 8

III.    Title III does not prohibit redacting sensitive voter information. ................. 11

IV.     DOJ's collection of Georgia's voter list would violate the Privacy Act. ....... 13

CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) ..................................................................5

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .................................................................................10

*Commerce v. New York*,
588 U.S. 752 (2019) ...................................................................................6

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...................................................................................2

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962) ..........................................................8

*Jones v. Bock*,
549 U.S. 199 (2007) .................................................................................15

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .........................................................2, 3, 4, 7

*King v. Burwell*,
576 U.S. 473 (2015) ...................................................................................9

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ................14

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ......................................................................11

*Snook v. Tr. Co. of Georgia Bank of Savannah, N.A.*,
859 F.2d 865 (11th Cir. 1988) ...................................................................6

*Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) .....................................................................4

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) .....................................................................................7

*United States v. Benson*,
No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ...................... 2, 5

*United States v. Kaley*,
579 F.3d 1246 (11th Cir. 2009) ................................................................................ 3

*United States v. Oregon*,
No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) .......................... *passim*

*United States v. Powell*,
379 U.S. 48 (1964) .......................................................................................... 2, 3, 4, 8

*United States v. Weber*,
No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .................... *passim*

*Util. Air Regul. Grp. v. EPA,*
573 U.S. 302 (2014) ................................................................................................. 9

*West Virginia v. EPA*,
597 U.S. 697 (2022) ................................................................................................. 9

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ............................................................................................... 10

## Statutes

26 U.S.C. § 7604(a) ................................................................................................... 3

5 U.S.C. § 552a(a)(3) .............................................................................................. 14

52 U.S.C. § 20507(a)(4) .......................................................................................... 13

52 U.S.C. § 20703 ..................................................................................................... 1

52 U.S.C. § 20705 ..................................................................................................... 3

52 U.S.C. § 21083(a)(1)(A) ..................................................................................... 13

52 U.S.C. § 21085 ................................................................................................... 13

## Rules

Fed. R. Civ. P. 1 ........................................................................................................ 1

## INTRODUCTION

DOJ's opposition to Intervenors' motion to dismiss merely confirms that it has failed to state a claim under Title III of the Civil Rights Act of 1960 ("CRA").

To start, Title III requires an explicit "statement of the basis and the purpose" of a records demand, 52 U.S.C. § 20703, yet DOJ has failed to provide *any* basis for its demand for Georgia's unredacted voter list, and its alleged purpose—to ascertain Georgia's compliance with its list maintenance obligations under other federal laws enacted after the CRA—is beyond the scope of Title III. DOJ has thus failed to satisfy the threshold statutory requirements Congress imposed on Title III demands.

There are several other reasons why this suit must be dismissed. For one, Georgia's privacy laws forbid the demanded disclosure, and Title III does not preempt those laws. For another, the federal Privacy Act requires agencies to follow procedural safeguards before acquiring sensitive personal information. Because DOJ has not followed those safeguards, it is barred from collecting the data that it seeks.

Faced with these fatal defects in its claim, DOJ insists that Rule 12(b) does not even apply, and that the Court should instead rubber-stamp its demand for Georgia's unredacted voter list at the outset of this litigation by granting a "motion to compel." But the Federal Rules of Civil Procedure are clear that they "govern the procedure in *all* civil actions," Fed. R. Civ. P. 1 (emphasis added), including this one, absent an express exemption. And nothing in Title III exempts DOJ's claim

1

from Rule 12(b)'s vital gatekeeping function of "weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The Court should thus dismiss DOJ's claim, just as three district courts have recently done in DOJ's suits for other states' unredacted voter lists. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026).

## ARGUMENT

### I.   The motion to dismiss is appropriate under the Federal Rules.

DOJ primarily relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), to argue that its CRA demand is immune from judicial review. *See* ECF No. 31-3 ("Mem.") at 9–12. But as two federal courts have recently held, *Lynd* is fundamentally irreconcilable with the Supreme Court's subsequent decision in *United States v. Powell*, 379 U.S. 48 (1964). *See Weber*, 2026 WL 118807, at *8 (holding that DOJ's parallel lawsuit in California was governed by Federal Rules before proceeding to grant motions to dismiss); *Oregon*, 2026 WL 318402, at *8 ("[T]he Court applies the Federal Rules of Civil Procedure as in any other case").

Rejecting the argument DOJ makes here, *Powell* held that because the tax investigation statute before it "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil*

*Procedure apply,*" and courts may "*inquire into the underlying reasons for the*" government's demand. 379 U.S. at 58 & n.18 (emphases added). *Powell* construed statutory text that was *identical* to the relevant language in Title III—both provide that courts "shall have jurisdiction by appropriate process to compel" the disclosure of covered records. 26 U.S.C. § 7604(a); 52 U.S.C. § 20705. *Powell* thus compels the same conclusion as to Title III, which likewise says nothing to disturb the default rules for civil litigation. Since *Powell* "directly conflicts with the analytical framework announced" in *Lynd*, the Fifth Circuit decision has been superseded on this point. *See United States v. Kaley*, 579 F.3d 1246, 1256 (11th Cir. 2009) (citation modified); *see also Oregon*, 2026 WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd.*"). This Court is thus bound by *Powell*, not *Lynd*.

Even if *Lynd* were good law, it would not prohibit the Court from dismissing this case or justify granting DOJ's motion to compel. The facts and issues before the *Lynd* court bear no resemblance to those here. To start, there was no reason in *Lynd* to doubt that DOJ had a sufficient factual basis for its demand and invoked Title III for a valid purpose, unlike here. *See infra* Argument § II. As the court explained, Title III's "clearest purpose[]" is to permit investigations "concerning infringement or denial of . . . voting rights." 306 F.2d at 228. In *Lynd*, DOJ was doing just that: demanding voter records based on *actual evidence* of racial discrimination "with

3

respect to registration and voting." *Id.* at 229 n.6. But here, DOJ has *no* factual basis for its investigation and seeks to invoke Title III to "ascertain" whether Georgia has complied with voter list maintenance obligations *under the NVRA and HAVA*—an unprecedented theory that has nothing to do with the concerns animating the CRA. *See Weber*, 2026 WL 118807 at *9 ("Title III was not passed as a tool for NVRA compliance."); *Oregon*, 2026 WL 318402, at *10 (similar). Nor did *Lynd* consider whether the CRA preempted a state's voter privacy laws protecting sensitive information, or whether the Privacy Act (passed after *Lynd*) barred the collection of a state's voter list if the prescribed procedural safeguards were not followed. *See infra* Argument §§ III & IV. In fact, even *Lynd* acknowledged that courts must be "open for determination . . . [i]n the event of a genuine dispute." 306 F.2d at 226. There is certainly such a dispute here.

DOJ's attempt to immunize its claim from judicial review fails for other reasons. Judicial review does not rest upon "specific[] authoriz[ation]" by statute, as DOJ claims. Mem. 13–14. Rather, it flows from the first principle that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Powell*, 379 U.S. at 58. Consequently, when the government comes to court to compel the disclosure of records, courts routinely review the lawfulness of the demand. *See, e.g.*, *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil

4

investigative demand after inquiry into the basis and purpose of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (internal quotation marks and citation omitted).

Applying these principles, courts have subjected DOJ's claims in its parallel suits for state voter lists to judicial review. *See Weber*, 2026 WL 118807, at *8–10; *Oregon*, 2026 WL 318402, at *7–8. DOJ attempts to seize on a decision from a district court in Michigan, but even that court "appl[ied] the Rule 12(b)(6) standard to evaluate the United States' CRA claim" and then dismissed the claim, just on different grounds than *Weber* and *Oregon*. *Benson*, 2026 WL 362789 at *7–11.

Even if the Court were to deny the motions to dismiss here, the matter should then proceed to discovery, including on whether DOJ's purpose in seeking Georgia's unredacted voter list is pretextual. *See Powell*, 379 U.S. at 57 (holding that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"). There is already reason to doubt that DOJ's *stated* purpose is its *true* purpose—including public statements by Attorney General Bondi and Assistant Attorney General Dhillon. *See* Mot. to Dismiss 5–7. Indeed, a DOJ attorney staffed to work on these cases blew the whistle to the New York Times, reporting DOJ was being "dishonest" in its stated

intentions with states' unredacted voter lists.[1] As other courts have observed in parallel litigation, courts need not accept DOJ's "contrived" rationale to demand a state's unredacted voter list. *Weber*, 2026 WL 118807, at *10 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 756 (2019)); *see also Oregon*, 2026 WL 318402, at *11 ("The presumption of regularity that has been previously extended to [DOJ] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds."). Further, awarding DOJ the final relief it seeks now via an order to compel would effectively grant DOJ summary judgment, contrary to the Eleventh Circuit's admonition that summary judgment "should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (reversing grant of summary judgment). Accordingly, even if the Court denied the motions to dismiss, it should deny DOJ's motion to compel.

## II.    DOJ did not state any "basis" or a proper "purpose" for its demand.

As Intervenors explained in their motion to dismiss, DOJ's demand for Georgia's statewide voter registration list fails to satisfy the CRA's express requirement to provide a statement of "the basis and the purpose" for its demand. 52

---

[1] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://perma.cc/JGH7-NQ7P.

U.S.C. § 20703. DOJ's opposition fails to rehabilitate its Complaint; therefore, its claim should be dismissed.

### A.       DOJ did not provide any statement of the basis for its demand.

DOJ's opposition brief confirms that it has *no* factual basis for investigating the sufficiency of Georgia's list maintenance obligations. Nor did DOJ state any basis for its investigation in its letter to Secretary Raffensperger. *See* Mot. to Dismiss 14–15. Instead, DOJ now puzzlingly asserts that "the basis for the demand was Title III." Mem. 6. But that is the *authority* under which its demand was made, not its factual *basis*. *See, e.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (defining "basis" as the "groundwork," "support," or "foundation"); *Oregon*, 2026 WL 318402, at *9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."). Accordingly, "[r]eading 'basis' in the way Plaintiff suggests collapses its meaning with that of 'purpose.'" *Id.* DOJ's read would thus violate the "cardinal principle of statutory construction" that no "word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

Demands made contemporaneously with the passage of the CRA confirm that DOJ once understood Title III to require it to state its factual basis. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6 ("This demand is *based upon information* in the possession of the Attorney General tending to show that distinctions on the basis of race or color

have been made with respect to registration and voting within your jurisdiction.")
(emphasis added); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962),
*aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar). In
contrast, DOJ's fishing expedition here ignores this standard.

Finally, DOJ's assertion that the factual support for its basis cannot be
questioned, *see* Mem. 25–26, is squarely foreclosed by *Powell*, which held "a court
may not permit its process to be abused" when confronted with a government records
demand, 379 U.S. at 58. To prevent such an abuse, a court must evaluate whether (i)
the "investigation will be conducted pursuant to a legitimate purpose," (ii) "the
inquiry may be relevant to the purpose," and (iii) the "steps required . . . have been
followed." *Id*. at 57–58. In any event, the sufficiency of DOJ's factual support is not
at issue here because DOJ's demand failed to provide *any* factual basis at all. That
by itself requires dismissal. *See Weber*, 2026 WL 118807, at *9 (holding that DOJ
failed to "establish[] the basis for its request" because it failed to explain why it
believed California may have violated the NVRA or HAVA).

**B.    DOJ did not provide a legally sufficient purpose for its demand.**

DOJ's demand also fails to satisfy Title III's "purpose" requirement, an
independent basis for dismissal. Congress indisputably enacted Title III to
investigate the type of conduct that animated the Civil Rights Act. *See* Mot. to
Dismiss 13; 15–16. DOJ admits that is not its purpose here. Rather, DOJ claims to

8

seek Georgia's unredacted voter list to assess the state's compliance with the list maintenance requirements of the NVRA and HAVA. Mem. 7. That is insufficient.

DOJ contends that CRA investigations cannot be limited to those based on racial discrimination or violations of the right to vote, Mem. 17–18, but that argument commits a fundamental error of statutory interpretation: it invites courts to construe statutes as isolated provisions, ignoring its full context. *See King v. Burwell*, 576 U.S. 473, 486 (2015) ("[The court's] duty, after all, is to construe statutes, not isolated provisions." (citation modified)); *see also* Antonin Scalia & Brian A. Garner, *Reading Law* 145 (2012) ("The text must be construed as a whole."). Any interpretation of the CRA's "purpose" requirement must "account for both the specific context in which . . . language is used and the broader context of the statute as a whole." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (citation modified). This principle has particular force when an agency claims sweeping statutory authority; in such cases, courts do not assume that Congress meant "to confer the power the agency has asserted" simply because an isolated phrase can bear that reading. *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). Instead, courts examine the statute as a whole to determine whether Congress in fact granted the authority the agency claims. *Id.* Applying that rule, courts have rejected expansive constructions that had "a colorable textual basis" but strained the statute's structure and design. *See id.* at 721–23 (collecting cases).

Here, the term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's powers to investigate violations of *voting rights* protected by the Civil Rights Act of 1957. *See* Mot. to Dismiss 13–16; *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 655 (2020) (interpreting the Civil Rights Act of 1964 by "orient[ing] ourselves to the time of the statute's adoption"). To do otherwise would be to conclude Congress granted DOJ far-reaching authority to use Title III to demand records for the purpose of investigating compliance with *any* federal statute, even those dealing with subjects far afield from the CRA. Had Congress intended to award such extraordinary, plenary powers, it surely would have said so explicitly. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

Tellingly, DOJ fails to cite any case in which a court granted a CRA demand made for the purpose of assessing states' NVRA or HAVA compliance. Although DOJ contends that it "has pursued successful matters" to obtain voter lists under the CRA for this purpose, Mem. 33–34 & n.10, it later concedes that the two examples it relies on were resolved by the parties through negotiation. *Id*. "[N]either case required any court to decide whether that was a permitted use of Title III." *Oregon*, 2026 WL 318402 at *10 n.3. Title III's plain text and the overall statutory scheme confirm that it was not.

10

### III.   Title III does not prohibit redacting sensitive voter information.

DOJ's claim must also be dismissed because Georgia is entitled to redact sensitive personal information from any disclosure of its voter list. *See* Mot. to Dismiss 17–21. DOJ does not contest that Georgia law protects such information; the only question, then, is whether the CRA preempts Georgia's voter privacy laws. It does not.

DOJ does not appear to dispute that courts must *presume* that Congress does not intend to preempt state law. *See id.* at 18. Since nothing in Title III addresses or requires the release of sensitive voter data, that should settle the question. As Intervenors explained, even the NVRA—one of the underlying laws that DOJ is supposedly enforcing through this demand—allows states to redact sensitive voter information before permitting the inspection of voter files. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). Congress's decision not to preempt state privacy laws in the NVRA—or, more recently, in HAVA—reinforces that Title III also does not preempt such state laws. *See* Mot. to Dismiss 19–21.

Undeterred, DOJ insists the CRA "does not exclude production of non-public records." Mem. 27. But even the chief case on which DOJ relies makes clear that Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. DOJ fails to address or even acknowledge this.

11

DOJ next argues that Title III must be read to reach sensitive information contained within voter files because otherwise Section 304 of the CRA—which limits the instances in which DOJ may "disclose" records it receives pursuant to a Title III demand—would have no purpose. Mem. 35. But DOJ forgets its history. Some of the most sensitive information protected by Georgia law (such as driver's license and social security numbers) were not required to be included in state registration records until HAVA was enacted decades after Title III. *See* Mot. to Dismiss 18–20. Clearly, then, Congress did not contemplate in 1960 that state voter records would contain such sensitive information, nor intend to preempt state laws protecting that information from disclosure. The fact that Congress nonetheless chose to limit further dissemination of records obtained through Title III says nothing about whether the law preempts Georgia's voter privacy laws.

DOJ then resorts to policy arguments, complaining it would "eviscerate" Title III to hold that it did not reach sensitive voter information, and that DOJ would not be able to "meaningfully investigate" a state's list maintenance efforts under HAVA and the NVRA without "access to the voter identification numbers." Mem. 36. But there is nothing to "eviscerate"—Congress never meant for DOJ to be able to "investigate" a state's compliance with HAVA or the NVRA using Title III in the first place. Indeed, both HAVA and the NVRA were passed long after the CRA. Nor is the unredacted voter file necessary for DOJ to evaluate whether Georgia has

complied with HAVA or the NVRA, as those statutes only require states to make "reasonable" efforts to remove certain categories of ineligible registrants. 52 U.S.C. § 20507(a)(4). Congress never envisioned DOJ using "voter identification numbers" to look over a state's shoulder and double-check its work, voter-by-voter. If Congress had thought DOJ needed such information or that such a review were appropriate, it surely would have made that clear in the NVRA or HAVA—but it did not. Rather, Congress commanded that state voter lists must be "maintained" and "administered *at the State level*" and that list maintenance decisions be left to the "discretion" of the states. 52 U.S.C. §§ 21083(a)(1)(A), 21085 (emphasis added).

Nor is there any merit to DOJ's suggestion that "private parties have been granted access to even more detailed voter data than what the United States has requested." Opp. at 37. In the case DOJ cites, the court *excluded* social security numbers and other confidential data from disclosure and entered a strict protective order. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1. That case—which also did not involve Georgia's privacy laws—is thus irrelevant here.

## IV.   DOJ's collection of Georgia's voter list would violate the Privacy Act.

DOJ's claim must also be dismissed because DOJ has failed to comply with the Privacy Act. *See* Mot. to Dismiss 21–25. DOJ contends that because the Privacy Act regulates only federal agencies, it "does not restrict the ability of state actors to

13

share information with federal agencies." Mem. 41. But the Privacy Act imposes obligations on federal agencies when they seek to "maintain" a system of records, as DOJ does here. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate"). That the Privacy Act does not directly regulate state entities is irrelevant, because it bars *DOJ* from maintaining, collecting, or using Georgia's voter list. *See Weber*, 2026 WL 118807, at *17–18 (holding DOJ's demand for California's voter list violated Privacy Act).

DOJ is also wrong that the Privacy Act "simply require[s]" information "be securely stored and not be subject to unauthorized dissemination or use." Mem. 39. In fact, it requires much more, including that an agency publish a System of Records Notice ("SORN") in the Federal Register that discloses details about the agency's plans whenever it seeks to "establish[]" a system of records, 5 U.S.C. § 552a(e)(4), and also "provide an opportunity for interested persons to submit written data, views, or arguments to the agency," *id.* § 552a(e)(11); s*ee also League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1–2 (D.D.C. Nov. 17, 2025) (describing the Privacy Act's "substantial protections" and "procedural safeguards"). DOJ did none of that here.

As a last resort, DOJ claims it was not required to plead compliance with the Privacy Act. *See* Mem. 39. Irrelevant. It is well established that a motion to dismiss may be granted when the "allegations in the complaint suffice to establish" "the basis

14

for dismissal." *Jones v. Bock*, 549 U.S. 199, 215 (2007). DOJ does not contest that it was required to publish an authorizing SORN. In opposition, DOJ cites to a table of nearly every SORN ever issued by DOJ, *see* Mem. 40 (citing 82 Fed. Reg. 24147 (May 25, 2017)), without making any effort to explain how any particular SORN applies here. None does. *See* Mot. to Dismiss 23–24. As a result, the Privacy Act bars DOJ's claim for Georgia's voter list.

## CONCLUSION

Intervenors respectfully request the Court dismiss this suit for failure to state a claim and deny DOJ's motion to compel.

15

Dated: March 5, 2026

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Branden D. Lewiston*
Marcos Mocine-McQueen*
Max C. Accardi*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
unkwonta@elias.law
blewiston@elias.law
mmcqueen@elias.law
maccardi@elias.law
Tel: (202) 968-4652

Adam M. Sparks
Ga. Bar. No. 341578
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
Suite 3500, One Atlantic Center
Atlanta, GA 30309
Tel: (404) 888-9700
Fax: (404) 888-9577
Email: sparks@khlawfirm.com

*Counsel for Intervenors Black Voters Matter Fund,
CWA Local 3204, and
CWA Local 3204 Retired Members Council*

*Appearing pro hac vice

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa. This document was prepared on a computer using Times New Roman font (14 point).

This 5th day of March, 2026.

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta

17