# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,

                *Plaintiff*,

           v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia,

                *Defendant*.

Case No. 1:26-cv-00485-ELR

# RESPONSE IN OPPOSITION TO CROSS MOTION TO COMPEL BY INTERVENOR-DEFENDANTS NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE GEORGIA STATE CONFERENCE, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, AND QUINETTE WESTBROOKS

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT .................................................................................................1

    I.    Plaintiff's Demands Violate Federal Privacy Law..............................5

    II.   Title III Does Not Require Georgia to Electronically Disclose Sensitive Voter Data................................................................................8

CONCLUSION ...........................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Found. v. Bonta*,
   594 U.S. 595 (2021) ................................................................................6

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   266 F. Supp. 3d 297 (D.D.C. 2017) ......................................................7

*Greater Birmingham Ministries v. Sec'y of State for Ala.*,
   105 F.4th 1324 (11th Cir. 2024) ...........................................................9

*In re 2025 UPMC Subpoena*,
   2025 WL 3724705 (W.D. Pa. Dec. 24, 2025), *judgment entered sub nom.*
   *In re: 2025 UPMC Subpoena*, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026)..........4

*In re Children's Nat'l Hosp.*,
   2026 WL 160792 (D. Md. Jan. 21, 2026)..............................................4

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
   2026 WL 33398 (D. Colo. Jan. 5, 2026)................................................4

*In re Subpoena No. 25-1431-014, Misc. Action No. 25-39*,
   2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) .......................................2

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958)................................................................................6

*Reno v. Condon*,
   528 U.S. 141 (2000)................................................................................8

*United States v. Benson*,
   2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225
   (6th Cir. Feb. 27, 2026)....................................................................2, 5

*United States v. Oregon*,
   2026 WL 318402 (D. Or. Feb. 5, 2026)................................................5

*United States v. Powell*,
   379 U.S. 48 (1964)..................................................................................2

**Statutes**

18 U.S.C. § 2721(a) ....................................................................................8

5 U.S.C. § 552a(a)(3) ..................................................................................5

5 U.S.C. § 552a(a)(5) ..................................................................................5

5 U.S.C. § 552a(e)(4) ...............................................................................5, 7

5 U.S.C. § 552a(e)(7) ..................................................................................5

5 U.S.C. § 552a(f) ......................................................................................5

52 U.S.C. § 20703 ................................................................................ 1, 8, 9

E-Government Act, § 208(b) ........................................................................7

O.C.G.A. § 21-2-221(e) ...............................................................................8

O.C.G.A. § 21-2-221(h) ...............................................................................8

O.C.G.A. § 21-2-221.2 .................................................................................8

**ARGUMENT**

Based on its own prior admission, the Department of Justice ("DOJ") seeks to commandeer the Civil Rights Act of 1960 ("CRA") to compel unprecedented disclosure of unredacted, sensitive personal information of every Georgia voter solely to conduct a fishing expedition to try to uncover some purported violation of the National Voting Rights Act ("NVRA") and Help America Vote Act ("HAVA"). But the DOJ cannot use the CRA to compel sensitive voter data whenever it wishes to investigate a possible violation of *any* statute. Congress enacted the CRA to combat *voting discrimination*. Courts cannot enforce Title III information requests entirely untethered to that purpose. *See* Intervenor-Defs. National Association for the Advancement of Colored People's Motion to Dismiss ("NAACP MTD") § I(A), ECF No. 80.

The applicable limitation stems directly from the text of Title III, which requires DOJ to specify the "purpose" for its investigation and its "basis" for suspecting that Georgia is failing to comply with the statute's anti-discrimination obligations. *See* 52 U.S.C. § 20703. As explained in Intervenor-Defendants' Motion to Dismiss, DOJ's demand for the unredacted driver's license and Social Security numbers of every Georgia voter fails to satisfy either requirement. *See* NAACP MTD Part II.

DOJ cannot justify its demand, so it argues courts may not review it.  Wrong. The Court's "role is not that of a mere rubber stamp."  *In re Subpoena No. 25-1431-014*, F. Supp. 3d, 2025 WL 3252648, at *12 (E.D. Pa. Nov. 21, 2025) (denying DOJ's administrative subpoena for sensitive patient data because "[e]nforcing these requests would transform Congress's . . . grant of authority . . . from a tool of legitimate inquiry into a license for intrusion Congress never granted").  When the Government seeks to "invoke[]" the "court's process" to "enforce" its requests for production or disclosure of documents, its demands are subject to judicial review. *United States v. Powell*, 379 U.S. 48, 53, 58 (1964); *see* NAACP MTD Part I ("DOJ's Demand Is Subject to Judicial Review.").

DOJ's reliance on *United States v. Benson*, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225 (6th Cir. Feb. 27, 2026), is misplaced. Consistent with established law, *Benson* held that even in the context of a summary enforcement proceeding, "an agency must show 'that its investigation has a legitimate purpose, that its inquiry may be relevant to that purpose, that it does not already have the requested information and that it otherwise has followed any statutory requirements." 2026 WL 362789, at *7 (citing *Powell*, 379 U.S. at 57–58). DOJ cannot make that showing.  *See* NAACP MTD Part II.A.  DOJ's claim that sensitive voter information "is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not

eligible to vote in federal elections" does not show that the sensitive information sought is relevant to a legitimate purpose under Title III. *See* DOJ's Cross-Motion to Compel ("Cross-Motion"), at 7, ECF No. 31-1. The CRA does not empower DOJ to override existing state and federal list maintenance laws, which permit neither federal acquisition of state voter lists nationwide nor federal removal of registered voters.

Judicial review is all the more necessary given the evidence that DOJ's stated aim of "ascertaining compliance" with the NVRA or HAVA serves as pretext to expand federal control over elections beyond that permitted by law. *See* NAACP MTD Part II.A. Indeed, DOJ has conceded that it seeks at least to assume direct compliance responsibilities over state voter registration lists, if not construct a national voter roll of its own. *See* DOJ Conf. Memo. Of Understanding, ECF No. 16-2 at 31 (Memorandum of Understanding from DOJ to Georgia, also sent to several other states, describing similar voting records request as a "list maintenance project"); *see also United States v. Weber*, 2026 WL 118807, at *10 (C.D. Cal. Jan. 15, 2026) ("Representations by the DOJ itself show that their requests to states for voter roll data go beyond their purported compliance check with the NVRA and into the territory of comprehensive data collection."). Using the NVRA and HAVA compliance "as a smokescreen for its true objective" of federalizing voter list maintenance certainly constitutes "an abuse of the Court's process" warranting

3

judicial scrutiny. *See In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *6-7 (D. Colo. Jan. 5, 2026) (denying DOJ's administrative subpoena because "the government's proffered purpose for the Subpoena – investigating potential violations of the FDCA – is pretext[]" for "its true objective of pressuring pediatric hospitals into ending gender-affirmative care"); *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 (D. Md. Jan. 21, 2026) (denying DOJ administrative subpoena because "the Subpoena [was] a pretext to fulfill the Executive's well-publicized policy objective to terminate and block gender affirming healthcare"); *In re 2025 UPMC Subpoena*, 2025 WL 3724705, at *1-2 (W.D. Pa. Dec. 24, 2025) ("no reported federal decision has ruled in the government's favor" on DOJ administrative subpoenas that "carr[y] more than a whiff of ill-intent"), *judgment entered sub nom. In re: 2025 UPMC Subpoena*, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026).

The need for judicial review is especially paramount here, where DOJ invokes the CRA—a statute Congress enacted to *expand* access to voting—to compel the sensitive information of Georgia voters, a request that will undoubtedly "have a chilling effect" on voter participation. *See Weber*, 2026 WL 118807, at *2 (denying CRA voting records demand in California); *see also id.* ("voter registration, participation, as well as party affiliation are . . . protected by the First Amendment"). Indeed, "American citizens like political minority groups and working-class

immigrants [] may consider not registering to vote or skip casting a ballot because they are worried about how their information will be used." *See id.* Likewise, "[t]he possibility that [a State's] voter registration list could be used to further [immigration enforcement] efforts in the absence of congressional action, may very well lead to an erosion of voter rights and voter participation." *See United States v. Oregon*, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026) (denying CRA voting records demand in Oregon). The Court should not allow DOJ to distort Title III from a statute protecting access to the ballot into one that chills participation and furthers a federal list-maintenance project.

Three district courts have already denied DOJ's identical CRA demands for unredacted voter records in other States. *Weber*, 2026 WL 118807, at *7, *20; *Oregon*, 2026 WL 318402, at *13; *Benson*, 2026 WL 362789, at *11. This Court should do the same.

## I.    Plaintiff's Demands Violate Federal Privacy Law.

Three federal privacy laws bar disclosure of Georgia's unredacted voter data: (1) the Privacy Act; (2) the E-Government Act; and (3) the Driver's Privacy Protection Act (DPPA).

**Privacy Act.** The Privacy Act prevents federal agencies from collecting records regarding Americans' First Amendment activities. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f). That is exactly what DOJ seeks to do here. "[V]oter

5

registration, participation in elections, as well as party affiliation are all types of political expression protected by the First Amendment." *Weber*, 2026 WL 118807, at *17. DOJ not only demands that information, but seeks to associate it with voters' Social Security and driver's license numbers, thereby creating a centralized political dossier on every Georgia voter. This is precisely what the Privacy Act seeks to prevent. *See id.* (CRA demand in California violated Privacy Act).

DOJ's assertion that it will maintain confidentiality misses the point. "[D]isclosure" to the government "can chill association even if there is no disclosure to the general public." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021) (cleaned up). Even if confidential, the production of Georgia citizens' voting records—matched to them through their personal identifying information—is the exact type of "compelled disclosure of affiliation" that "constitute[s] as effective a restraint on freedom of association as other forms of governmental action." *See id.* at 606 (California law compelling nonprofits to disclose the identity of their donors violated the First Amendment) (cleaned up). The NAACP has had direct experience with the First Amendment chilling effects of government demands for personal identifying information. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 451, 462 (1958).

Even if DOJ's demand did not implicate the Privacy Act's First Amendment protections, it still violates the Act's procedural requirements. "The Privacy Act

requires that a [System of Records Notices (SORNs)] be published in the Federal Register before 'establish[ing] or revis[ing]' a 'system of records.'" *See Weber*, 2026 WL 118807, at *18 (quoting 5 U.S.C. § 552a(e)(4)). Because DOJ published no such notice before filing its CRA demand, the Privacy Act bars any disclosure.

**E-Government Act.** As the "plain text of the statute" makes clear, the "information DOJ seeks to collect from [Georgia]—like names and addresses of voters—is personal information protected by the E-Government Act." *See Weber*, 2026 WL 118807, at *19 (CRA demand in California violated E-Government Act). The E-Government Act requires that the Government complete various procedural requirements, including a "privacy impact assessment," before "initiating a new collection of information that . . . includes any information in an identifiable form permitting the physical or online contacting of a specific individual." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 310-11 (D.D.C. 2017) (quoting E-Government Act, § 208(b)); *Weber*, 2026 WL 118807, at *19. DOJ has completed no such assessment here.

**The Driver's Privacy Protection Act (DPPA).** The DPPA generally prohibits any State DMV from "knowingly disclosing" "personal information," including an individual's "social security number" and "driver identification number," "in connection with a motor vehicle record," unless the government is using that information to "carry[] out its functions." *Reno v. Condon*, 528 U.S. 141,

7

143, 145 n.1 (2000) (citing 18 U.S.C. § 2721(a)).  Georgia's voter registration database routinely receives information directly from the Georgia DMV, *see* O.C.G.A. §§ 21-2-221(e), (h); 21-2-221.2, meaning that disclosing any voter registration records to the federal government would also expose DPPA-protected information.  DOJ wholly fails to explain how Georgia voters' driver's license and Social Security numbers are at all necessary for DOJ to "carry[] out its functions." *See* NAACP MTD Part II.A.3.  The DPPA therefore bars their disclosure.  *See Weber*, 2026 WL 118807, at *19 (CRA demand in California violated the DPPA).

## II.    Title III Does Not Require Georgia to Electronically Disclose Sensitive Voter Data.

DOJ does not only seek Georgia's unredacted voter roll, but it demands that the Georgia Secretary of State Raffensperger produce those records electronically, either "by encrypted email" or via DOJ's "Justice Enterprise File Sharing" file collector.  Letter from Harmeet K. Dhillon, Ass't Att'y Gen. of the U.S., to Brad Raffensperger, Sec'y of State of Ga. (Aug. 14, 2025) ("August 14 Letter"), ECF No. 6-4.  Even if DOJ's Title III request were appropriate (it is not), its request for electronic production goes too far.  Title III only requires records to "be made available for inspection, reproduction, and copying at the principal office of such custodian" of the records.  52 U.S.C. § 20703.  Making records "available for inspection, reproduction, and copying" does not require that states "turn [unredacted] records over in an electronic format."  *See Greater Birmingham*

8

*Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1332-33, 1335 (11th Cir. 2024) (rejecting electronic disclosure requirement under analogous NVRA disclosure provision).

## **CONCLUSION**

DOJ's argument that it may use the CRA to seek unredacted voting records "to see if any Federal laws were violated" contorts the CRA into a federal investigation mechanism without bounds or grounding in the statute.  *See* Cross-Motion at 18.  Georgia already provided DOJ its "complete list of registered voters," with sensitive information redacted in accordance with the NVRA and HAVA.  ECF No. 6-5 at 4.  DOJ provides no explanation for why it needs more.  *See* Weber, 2026 WL 118807, at *9 ("[E]ven if compliance with the NVRA was a valid purpose, the DOJ states no reason why an unredacted version of [the state's] voter list is necessary under the NVRA.").  Intervenor-Defendnats respectfully submit that the Court must deny DOJ's Cross Motion to Compel Production of Federal Election Records and grant Intervenor-Defendants' Motion to Dismiss.

Dated: March 13, 2026                      Respectfully submitted,

                                                         By: */s/* Reema Shah _____

Reema Shah* (N.Y. Bar No. 5618194)
Anton Metlitsky* (N.Y. Bar No. 4383527)
Andrew Frackman* (N.Y. Bar No. 1751288)
(N.J. Bar No. 035421988)
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10018
Tel: (212) 326-2000
rshah@omm.com
ametlitsky@omm.com
afrackman@omm.com

Noah B. Bokat-Lindell* (D.C. Bar No.
156032) (MD Bar No. 1612130048)
O'MELVENY & MYERS LLP
1625 Eye Street NW, 10th Floor
Washington, DC 20006
Tel: (202) 383-5300
nbokat-lindell@omm.com

Leah Frazier* (D.C. Bar No. 492540)
Robert N. Weiner* (D.C. Bar No. 298133)
Gillian Cassell-Stiga* (D.C. Bar No.
90032319)
Julie M. Houk*
Catherine Meza* (D.C. Bar No. 1045688)
Grace Thomas* (D.C. Bar No. 90018667)
Samantha Heyward* (D.C. Bar No.
9002906)
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8600
lfrazier@lawyerscommittee.org
rweiner@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org
jhouk@lawyerscommittee.org
cmeza@lawyerscommittee.org
gthomas@lawyerscommittee.org

10

sheyward@lawyerscommittee.org


*Admitted *pro hac vice*
*Attorneys for Intervenor-Defendants*

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa.  This document was prepared on a computer using Times New Roman font (14 point).

Dated: March 13, 2026                    Respectfully submitted,

                                         By:  */s/ Reema Shah*