# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     *Plaintiff*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his Official Capacity as Secretary of State for the State of Georgia,<br><br>     *Defendant.* | Case No. 1:26-cv-00485-ELR |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF INTERVENOR-DEFENDANTS NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE GEORGIA STATE CONFERENCE, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, AND QUINETTE WESTBROOKS

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...........................................................................................................2

    I.     The Purpose of a Demand Under Title III Must Fit Within the Purpose of Title III. ..................................................................................2

    II.    No Court Has Ever Allowed DOJ to Use Title III to Acquire Unredacted Voter Data to Ascertain Statutory Compliance. ...............4

    III.   DOJ Cannot Use Title III to Override Congress's Decision to Enact HAVA Without a Disclosure Provision....................................9

    IV.   DOJ's Preemption Argument Manufactures a Conflict Between State and Federal Law Where None Exists.......................................11

    V.    DOJ Concedes the Insufficiency of Its Complaint as to Purpose. ......14

CONCLUSION ....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019)............................................................................13

*Carson v. Monsanto Co.*,
92 F.4th 980 (11th Cir. 2024)..............................................................................12

*Club Madonna Inc. v. City of Miami Beach*,
42 F.4th 1231 (11th Cir. 2022)............................................................................11

*Collins v. Yellen*,
594 U.S. 220 (2021) ............................................................................................10

*Dep't of Comm. v. New York*,
588 U.S. 752 (2019) ............................................................................................14

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008)...........................................................................13

*Hughes v. Talen Energy Mktg., LLC*,
578 U.S. 150 (2016) .........................................................................................3, 11

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962)..................................................................................2

*Legal Env't Assistance Found., Inc. v. EPA*,
118 F.3d 1467 (11th Cir. 1997)..............................................................................5

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ..................................................................................12

*United States v. Alabama*,
2:08-cv-0920 (M.D. Ala. Nov. 19, 2008)...............................................................7

*United States v. Alabama*,
No. 2:24-cv-1329 (N.D. Ala. Sept. 27, 2024) .....................................................6, 7

*United States v. Amore*,
No. 25-cv-639 (D.R.I.) ..................................................................................... 14, 15

*United States v. Beals*,
No. 1:24-cv-1807 (E.D. Va. Oct. 11, 2024) ...........................................................7

*United States v. Benson*,
2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225 (6th
Cir. Feb. 27, 2026)..................................................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*United States v. Galvin*,
  No. 25-13816-LTS (D. Mass. Apr. 9, 2026) ................................................. 4, 6, 15

*United States v. Georgia*,
  No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006) ...................................................... 5

*United States v. Hastie*,
  854 F.3d 1298 (11th Cir. 2017) ......................................................................... 3

*United States v. Lynd*,
  301 F.2d 818 (5th Cir. 1962) ............................................................................. 2

*United States v. Maine*,
  1:06-cv-00086 (D. Maine July 28, 2006) ........................................................... 8

*United States v. Oregon*,
  2026 WL 318402 (D. Or. Feb. 5, 2026) .................................................... 3, 14, 15

*United States v. Powell*,
  379 U.S. 48 (1964) ...................................................................................... 2, 3

*United States v. Vermont*,
  2:08-cv-217 (D. Vt. Oct. 10, 2008) ................................................................... 9

*United States v. Weber*,
  2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ..................................................... 2, 3

*Wisconsin Voter All. v. Millis*,
  166 F.4th 627, 629 (7th Cir. 2026) .................................................................. 14

**Statutes**

52 U.S.C. § 20507(a)(4) ................................................................................... 12

52 U.S.C. § 20507(i) ....................................................................................... 10

52 U.S.C. § 20703 ............................................................................................ 3

52 U.S.C. § 21081-83 ...................................................................................... 13

52 U.S.C. § 21083(a)(2)(A) ............................................................................. 10

52 U.S.C. § 21083(a)(2)(B) ............................................................................. 14

52 U.S.C. § 21083(a)(4) ................................................................................... 10

52 U.S.C. § 21083(a)(4)(A) ............................................................................. 13

52 U.S.C. § 21083(a)(5)(A) ............................................................................. 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

52 U.S.C. § 21111 .................................................................................... 10, 14

52 U.S.C. § 21142(a) ....................................................................................10

52 U.S.C. § 21142(b) ....................................................................................10

Pub. L. No. 107-252, 116 Stat. 1666 ...........................................................13

**Other Authorities**

*Memorandum of Understanding ("MOU")*, U.S. Dep't of Just. (May 13, 2008),
    https://perma.cc/JB7Z-JQDU .................................................................5

DOJ's Opposition confirms what its identical complaints across the country make clear: it has no lawful basis to compel Georgia to produce the unredacted personal data of every registered voter in the state. DOJ does not dispute that its demands are untethered to any investigation of voting rights violations. Instead, it asks this Court to accept that Title III grants the federal government blanket authority to acquire sensitive personal information from voter rolls simply to "assess compliance." That power grab finds no support in the statute's text, legislative history, or judicial authority. DOJ's claims fail at every turn.

*First*, DOJ claims it may seek voter data to assess compliance with *any* federal law, but its argument rests on dicta from a single, inapposite 64-year-old case and is plainly wrong. *Second*, DOJ cites a handful of historical examples of Title III enforcement, yet in none of them does a court adjudicate the kind of sweeping, aimless demand at issue here. *Third*, DOJ contends that HAVA's silence on disclosure confirms the reach of Title III, when in fact that statutory silence demonstrates the opposite: Congress deliberately chose not to authorize the compelled production of voter data under HAVA. *Fourth*, DOJ asserts that Georgia's privacy laws are preempted, but that is so only if Title III or HAVA actually requires disclosure of the data Georgia law protects—and as every court to address the issue has held, neither does. *Finally*, DOJ's assertion that its purpose is

1

"proper and lawful," Opp. 8, likewise depends on the existence of Title III authority DOJ has not established. The Court should dismiss the Complaint.

## ARGUMENT

### I.  The Purpose of a Demand Under Title III Must Fit Within the Purpose of Title III.

There is no "[b]inding precedent" (Response in Opposition to NAACP's Motion to Dismiss ("Opp."), ECF 89, 2) holding that Title III entitles DOJ to request unredacted election records merely to "assess compliance" (Opp. 8) with its federal statute of choice. *See United States v. Weber*, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026). The one case DOJ cites—*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962)—held nothing of the sort: It confirmed that Title III "authoriz[es] [the Government] to inspect . . . voting records" when "there are reasonable grounds for belief that certain voters are being *discriminatorily denied their voting rights* in a given county." *Id.* at 822 (emphasis added).[1]

Section 20703 is no more helpful to DOJ's case. That Title III does not expressly limit demands to those fulfilling its purposes does not mean DOJ is free to

---

[1] To the extent that *United States v. Lynd* and its later iteration, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), suggest that the factual foundation for the basis and purpose of a Title III demand is not subject to judicial review, the Supreme Court superseded those holdings in short order. *See United States v. Powell*, 379 U.S. 48, 53, 58 (1964); Intervenor-Defs. National Association for the Advancement of Colored People's Motion to Dismiss ("Mot."), § I(A), ECF 80-1.

2

seek election materials for whatever reason. "Congress legislates against the backdrop of certain unexpressed presumptions," including the principle that the government must make investigative requests "pursuant to a legitimate purpose" through an inquiry "relevant to [that] purpose." Mot. § II; *United States v. Powell*, 379 U.S. 48, 57-58 (1964). Had Congress intended to use a voting rights statute to grant DOJ unchecked power to acquire sensitive personal information for any reason, it would have said so explicitly—rather than requiring DOJ to provide a proper "purpose" for its requests. 52 U.S.C. § 20703; *see* Mot. § II(A). Interpreting the statute to permit any purpose would render the requirement superfluous. *United States v. Hastie*, 854 F.3d 1298, 1304 (11th Cir. 2017). DOJ's request cannot preempt Georgia privacy law if it does not align with the purposes of Title III, since "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016); *see* Part IV, *infra*.

DOJ is incorrect that "courts have never recognized" NAACP's interpretation of Title III. Opp. at 2. Two courts to address this question have held that Title III demands must serve purposes consistent with the statute. *See United States v. Oregon*, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026) ("[T]he 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights."); *Weber*, 2026 WL 118807, at *9 ("DOJ's

stated purpose" for near-identical demand of "voter roll maintenance enforcement and compliance" was likely "outside the scope of what Congress intended Title III to be used for").

The Court should reject DOJ's attempt to cherry-pick favorable lines from *United States v. Benson*, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225 (6th Cir. Feb. 27, 2026). While the *Benson* court held (incorrectly) that DOJ may use the CRA to investigate possible NVRA violations, it simultaneously dismissed DOJ's Title III demand, finding that statewide voter registration databases are not within the category of records required to be retained and produced under Title III. *Id.* at *11. The very same textual reasoning that caused the court to reject Michigan's scope argument led it to hold that "based on the statutory text," Michigan's "voter registration list is not subject to disclosure" under the CRA. *See id.* at *8-10. DOJ cannot simply extract the parts of *Benson* that favor its argument.

## II.   No Court Has Ever Allowed DOJ to Use Title III to Acquire Unredacted Voter Data to Ascertain Statutory Compliance.

DOJ cites seven examples of past enforcement actions under Title III, but these do not support its demand here. Prior agency practice cannot override the plain meaning of a statute. *See Legal Env't Assistance Found., Inc. v. EPA*, 118 F.3d 1467, 1477 (11th Cir. 1997). In none of DOJ's examples did a court evaluate the merits of a Title III request, let alone hold that Title III allows DOJ to collect unredacted voter

4

data to ascertain compliance with list maintenance statutes. That states voluntarily complied with Title III requests sheds no light on the statute's legal scope.

DOJ's cited examples also make clear that its current demands deviate from historical practice. Only two of the seven examples involve Title III demands similar to the one at issue here, and neither advances DOJ's case. In 2006 and 2008, DOJ invoked Title III to demand that Texas and Newton County, Georgia produce their voter registration lists—with driver's license and social security numbers included—to assess NVRA compliance. Consent Judgment and Decree, *United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), ECF 4; *Memorandum of Understanding ("MOU")*, DOJ (May 13, 2008), https://perma.cc/JB7Z-JQDU. But DOJ avoided judicial scrutiny in both cases. Newton County agreed via consent order to produce the data shortly after a complaint was filed. Texas did not litigate and agreed to an MOU handing over its voter rolls. There are many reasons litigants might comply with an unlawful document request, including politics, resource allocation, or miscalculation. That DOJ secured quick compliance in two instances does not mean its Title III demands were legal then, nor that its new request is now.

The remaining five examples are even further afield. To the extent any involved Title III requests, each involved investigations of substantiated voting rights violations. In other words, DOJ provided a *voting rights-related purpose* and

5

a *factual basis*—neither of which DOJ's current demand provides. *See* Mot. § II; *see United States v. Galvin*, No. 25-13816-LTS, at 6–9 (D. Mass. Apr. 9, 2026), ECF 92 (dismissing complaint where demand letter contained "no basis" and holding that "basis" and "purpose" are "conceptually distinct" requirements that cannot be collapsed). The two most recent examples prove the point. In Alabama and Virginia, DOJ alleged that a specific state infringed a specific group's voting rights, tailored its Title III request to information necessary to investigate those claims, and provided a factual basis.

**Alabama 2024.** DOJ brought NVRA claims against Alabama for removing thousands of purported "noncitizens" from its voter roll less than 90 days before the 2024 election, in violation of the NVRA's "Quiet Period Provision." Compl. ¶¶ 2-6, *United States v. Alabama*, No. 2:24-cv-1329 (N.D. Ala. Sept. 27, 2024), ECF 1. DOJ alleged that Alabama's "unlawful actions" put "potentially several hundred or even thousands [of] registered, eligible voters" at "risk [of] disenfranchisement just weeks before the upcoming federal election" and "deterred U.S. citizens who are fully eligible to vote." *Id.* ¶¶ 4-8. DOJ then explained in a letter that it had "reviewed reports" that Alabama removed purported noncitizens from its voter roll and sought information needed to investigate its claims, including lists of unlawfully removed voters and voters at risk of removal, and the "process" and "methodology" Alabama

6

used to remove voters. Letter, *Alabama*, *supra*, ECF 11-7.

**Virginia 2024.** That same year, DOJ brought NVRA claims against Virginia for implementing "a systematic process to remove" alleged noncitizens from "the statewide voter registration list," likewise in violation of the Quiet Period Provision. Compl. ¶¶ 2-5, *United States v. Beals*, No. 1:24-cv-1807 (E.D. Va. Oct. 11, 2024), ECF 1. The complaint alleged Virginia's "unlawful actions" had "likely confused, deterred, and removed U.S. citizens who are fully eligible to vote." *Id.* ¶ 7. As in Alabama, DOJ sent a letter to Virginia explaining that "initial review of available materials" suggested NVRA violations and requested related information, including the list of removed voters. Letter, *Beals*, *supra*, ECF 9-17, at 4. DOJ did not even cite Title III as authority for its request. *Id.*

**Alabama 2008.** DOJ's next example follows the same pattern. DOJ sued Alabama for violating the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") by failing to report the number of absentee ballots sent to "absent uniformed services voters," information that is necessary to monitor whether those individuals "are effectively exercising" the right to vote. Compl. ¶¶ 2, 7–9, *United States v. Alabama*, 2:08-cv-0920 (M.D. Ala. Nov. 19, 2008), ECF 1. As part of DOJ's investigation, it used Title III to request "absentee ballot affidavit envelopes" in 21 counties—not statewide unredacted voter files. Opp., Ex. 2 at 1-2. Because the

state planned to participate in the review process, and because Title III normally prohibits the United States from sharing voter information it receives, the parties moved the court to authorize disclosure as part of a broader consent order, which the court entered without commenting on the Title III requests. *Id.* at 2. This order in no way supports DOJ's argument that Title III allows it to demand *unredacted voter data* solely to *ascertain compliance with list maintenance statutes*. Opp. 3-4.

DOJ's last two examples are even further afield.

**Maine 2006.** The Maine consent decree was a negotiated settlement of HAVA and NVRA claims—not a contested adjudication of Title III's scope. DOJ sued Maine for failing to "comply with the disability accessibility requirement set forth in Section 301(a)(3) of HAVA" and HAVA and the NVRA's list maintenance requirements. Compl. ¶ 20, *United States v. Maine*, 1:06-cv-00086 (D. Maine July 28, 2006), ECF 1. Within days, Maine agreed to a court-enforced consent decree, later supplemented by a new decree after Maine failed to substantially comply. Supplemental Consent Decree, Opp. Ex. 1 at 1–3, ECF 89-1. To monitor Maine's compliance and "advise the United States of the State's progress in carrying out the terms of [the] decree," the consent order—with no reference to Title III—required Maine to produce its voter roll, including each "voter's full name" and "unique identifier." *Id.* at 8. It later required Maine to "retain . . . voter registration and list

8

maintenance records related to the terms of this decree and as set forth in [Title III]," and to make those records "available to counsel to the United States upon request." *Id.* at 9. This is the order's *only* reference to Title III.

**Vermont 2008.** DOJ brought a lawsuit against Vermont to "protect the rights granted by the UOCAVA," alleging "Vermont failed to comply with [the statute] in 2006 and did not report any data as required." Compl. ¶¶ 7, 10, *United States v. Vermont*, 2:08-cv-217 (D. Vt. Oct. 10, 2008), Opp. Ex. 3, ECF 89-3. Vermont moved to dismiss, the parties resolved the dispute, and DOJ dropped the case. By all appearances, the dispute did not involve Title III requests, and DOJ provides no support for its assertion that "the parties agreed that election officials are required to retain election records under the CRA." Opp. 4. Even if Vermont had agreed to comply with Title III's record-retention requirements, which would have no bearing on DOJ's demand that Georgia produce its citizens' unredacted voter data.

In sum, none of DOJ's cited examples comes close to a judicial holding that Title III authorizes blanket demands for sensitive personal data from every voter in a state for the purpose of conducting general NVRA/HAVA compliance audits.

### III.    DOJ Cannot Use Title III to Override Congress's Decision to Enact HAVA Without a Disclosure Provision.

Congress did not silently affirm DOJ's authority to compel unredacted voting records under Title III by enacting HAVA without a disclosure provision, as DOJ

suggests. Congress included enforcement provisions in HAVA, but only to bring civil actions for violations of HAVA's non-discrimination provisions—not to make unilateral demands for sensitive personal data. 52 U.S.C. § 21111. It also required HAVA grant recipients to maintain financial records to enable audits. 52 U.S.C. § 21142(a)-(b). These provisions indicate that HAVA did not silently provide for other records-access power. *See Collins v. Yellen*, 594 U.S. 220, 248 (2021).

DOJ claims that the "backdrop of Title III's existing inspection authority" meant that "no additional disclosure provision was necessary."  Opp. 6. But that reasoning would have made the NVRA's disclosure provision equally unnecessary. Rather, no new disclosure provision was necessary in HAVA because its list-maintenance provisions built upon those in the NVRA, *see* 52 U.S.C. § 21083(a)(2)(A) and (4), and Congress had already decided to include that new public-disclosure provision in the NVRA, *see* 52 U.S.C. § 20507(i). The "public"— of which the Attorney General is, of course, a member—could thus seek records related to HAVA's list-maintenance requirements under the NVRA's disclosure provision. *Id.* The problem for DOJ here is that courts have consistently construed the NVRA's disclosure provision to allow states to redact sensitive information. *See* Mot. 18 (citing cases). DOJ cannot use Title III, with its specific anti-discrimination purpose, as an end-run around Congress's deliberate choice to rely on the NVRA's

10

structure (and its narrower disclosure provision) in HAVA, s*ee* Mot. § II(A), particularly since doing so would require preempting state law when unnecessary to fulfill Title III's purposes. *See infra* Part IV.[2]

## IV.   DOJ's Preemption Argument Manufactures a Conflict Between State and Federal Law Where None Exists.

DOJ claims that the "only way" it can "assess whether Georgia is actually collecting the driver's license and SSN4 information required by" HAVA is "to examine those election records." Opp. 7. But this argument rests on the same flawed premise underlying DOJ's entire opposition: that Title III authorizes DOJ to compel sensitive, unredacted voter data to assess list maintenance. Only if that were so could Georgia privacy law pose any conflict. But the Supremacy Clause preempts state law only where it conflicts with valid federal authority. *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022). And "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Hughes*, 578 U.S. at 163. Thus, absent express or field preemption, which do not apply here, state law is only preempted "where, under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes

---

[2] DOJ's argument that NAACP's position would "treat[] congressional silence as a withdrawal of . . . [congressional] authority," Opp. 6, likewise presumes DOJ is correct that Title III already provided the authority to compel voter data solely to assess list maintenance. It doesn't. *See supra* Part I.

and objectives of Congress." *Id.* Since DOJ does not seek voters' sensitive data here

for any investigation that is in furtherance of Title III's anti-discrimination purposes,

Title III does not preempt Georgia's privacy statutes in this case. *See Pub. Int. Legal*

*Found., Inc. v. Bellows*, 92 F.4th 36, 53 (1st Cir. 2024).

Furthermore, DOJ's contention that it "can only meaningfully investigate and

enforce list maintenance requirements under HAVA by having access to" unredacted

records, Opp. 7 n.3, conflates records inspection with records production.[3]   Even if

DOJ had authority to verify that Georgia is collecting driver's license and SSN data,

that could be accomplished through far less invasive means—such as the redacted

records Georgia has already provided—rather than demanding the sensitive data of

every registered voter in the state.[4]   The NVRA's disclosure provision already

provides a mechanism to ascertain list maintenance compliance, without requiring

---

[3] To the extent DOJ may be gesturing at impossibility preemption, it only "occurs when it is "impossible for a private party to comply with both state and federal requirements." *Carson v. Monsanto Co.*, 92 F.4th 980, 997 (11th Cir. 2024).

[4] Notably, Georgia has already provided DOJ with a complete list of registered voters. ECF 16-1 at 11. DOJ has never explained why this production is insufficient to evaluate compliance with the NVRA and HAVA, which impose only a "reasonable effort" standard on states for list maintenance. 52 U.S.C. § 20507(a)(4); 52 U.S.C. § 21083(a)(4)(A). Courts have sustained redactions of sensitive personal information from records produced in government investigations. Mot. 25. DOJ's persistent failure to articulate how driver's license numbers and SSNs are necessary to evaluate whether Georgia is making "reasonable efforts" to maintain its voter rolls is evidence that the production already satisfies any legitimate federal interest.

disclosure of driver's licenses or SSNs. *See supra* Part III. Obstacle preemption applies only when state law "stands as an obstacle to the objective of the federal law"—not merely when it makes federal enforcement marginally less convenient. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008).

DOJ's assertion that Movants' position "eviscerat[es]" its ability to "investigate and enforce list" maintenance contradicts HAVA's history and text, which provide alternative means of enforcement. Congress enacted HAVA "in the wake of the 2000 presidential election," *Bellitto v. Snipes*, 935 F.3d 1192, 1199 (11th Cir. 2019), to provide additional funding to the states to "establish minimum election administration standards," Help America Vote Act of 2022, Pub. L. No. 107-252, 116 Stat. 1666; 52 U.S.C. §§ 21081-83 (establishing minimum requirements for state voting systems and voter registration lists). Relevant here, HAVA requires that states "perform list maintenance" "in a manner that ensures that" registered voters appear on state voter rolls and unregistered and ineligible voters are "removed" from state voter rolls. 52 U.S.C. § 21083(a)(2)(B). It also requires that voter registration applications include "the applicant's driver's license number" or "the last 4 digits of the applicant's social security number." *Id.* § 21083(a)(5)(A). If any states are "noncompliant," the "Attorney General can institute a civil action," *Wisc. Voter All. v. Millis*, 166 F.4th 627, 629 (7th Cir. 2026), for "declaratory and injunctive relief,"

13

52 U.S.C. § 21111. While DOJ can bring civil actions to enforce HAVA, not one provision in the statute authorizes it to compel disclosure of Georgia's voter rolls. *See Oregon,* 2026 WL 318402, at *6 ("HAVA grants the Attorney General the ability to bring a civil action for enforcement, not disclosure.").

## V.    DOJ Concedes the Insufficiency of Its Complaint as to Purpose.

DOJ's silence on pretext is telling. DOJ makes no attempt to address the President's public statements about "nationaliz[ing]" elections, the Attorney General's letter tying voter roll access to ICE enforcement, or the administration's acknowledged practice of sharing voter roll data with DHS. Mot. § II(A)(4). Indeed, since DOJ filed its opposition, Acting Chief of the Voting Section Eric Neff admitted in court that DOJ has "enter[ed] a use agreement with" DHS to check the citizenship of those on state voter rolls. Mar. 26, 2026 Hr'g Tr. at 65:8-9; *United States v. Amore,* No. 25-cv-639 (D.R.I.), ECF 47. DOJ's only response is to assert that its stated purpose is "lawful and limited." Opp. 8. But courts are not required to accept pretextual government justifications at face value. *See Dep't of Comm. v. New York,* 588 U.S. 752 (2019).[5] DOJ's failure to rebut this evidence should be treated as a

---

[5] Notably, the *Galvin* court rejected DOJ's attempt to supplement its demand letter's deficiencies through post-hoc litigation briefing, holding that the statute "directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand

concession.

DOJ's proposal of a protective order, suggesting that the Court "craft an order prohibiting" use of voter data for immigration enforcement or purposes other than NVRA/HAVA compliance (Opp. 8), reveals that DOJ itself recognizes the plausibility of Movants' pretext concerns. If DOJ's purpose were genuinely limited to NVRA and HAVA compliance, no such order would be necessary.[6]  More fundamentally, this proposal improperly shifts the burden from DOJ to the Court, conscripting into serving as an ongoing monitor of DOJ's data practices. Nothing in Title III contemplates such a role. The proper remedy for a complaint that fails to state a plausible claim is dismissal under Rule 12(b)(6), not judicial supervision of the executive branch's data practices.

## CONCLUSION

For these reasons, Intervenor-Defendants respectfully request that the Court dismiss the Complaint.

---

'contain[ed] a statement of the basis.'" *Galvin*, No. 25-13816-LTS, at 7 (citing *Oregon*, 2026 WL 318402, at *9). DOJ should not be permitted to rehabilitate its defective demand through after-the-fact justifications here, either.

[6] DOJ has already acknowledged the limited enforceability of such an order, particularly if the data is accessed by another agency. When asked during the *Amore* hearing whether the data could be used "for ICE going to people's homes and arresting them," Mr. Neff replied, "the Civil Rights Division cannot promise what any other agency will or will not do." Hrg. Tr., *Amore*, *supra*, at 66:8-9, 12-14.

Dated: April 10, 2026

Respectfully submitted,

By: */s/ Anton Metlitsky*

Dale R. "Bubba" Samuels
Georgia Bar No. 141971
Jack A. Samuels
Georgia Bar No. 388026
Lucy M. Ahmann
Georgia Bar No. 660925
THE SAMUELS FIRM
278 W. Main Street
Buford, GA 30518
Tel: 678-482-0208
bubba@thesamuelsfirm.com
jack@thesamuelsfirm.com
lucy@thesamuelsfirm.com

Leah Frazier*
Robert N. Weiner*
Julie M. Houk*
Gillian Cassell-Stiga*
Catherine Meza*
Grace Thomas*
Samantha Heyward*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8600
lfrazier@lawyerscommittee.org
rweiner@lawyerscommittee.org
jhouk@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org
cmeza@lawyerscommittee.org
gthomas@lawyerscommittee.org
sheyward@lawyerscommittee.org

16

Reema Shah*
Anton Metlitsky*
Andrew Frackman*
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10018
Tel: (212) 326-2000
rshah@omm.com
ametlitsky@omm.com
afrackman@omm.com

Noah B. Bokat-Lindell*
O'MELVENY & MYERS LLP
1625 Eye Street NW, 10th Floor
Washington, DC 20006
Tel: (202) 383-5300
nbokat-lindell@omm.com

*Admitted *Pro hac vice*

*Attorneys for Intervenor-Defendants*

17

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa. This document was prepared on a computer using Times New Roman font (14 point).

Dated: April 10, 2026                    Respectfully submitted,

                                         By: */s/ Anton Metlitsky*

18