IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his Official Capacity as Secretary of State for the State of Georgia,<br><br>Defendant. | CASE NO: 1:26-CV-485-ELR |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR EMERGENCY RULING**

The United States requested to expedite proceedings pursuant to Local Rule 7.2(B) regarding its Motion to Disqualify Judge Eleanor Ross. *See* Dkts. 112, 117. Good cause exists to expedite adjudication of the Motion to Disqualify, *see* Local Rule 7.2(B), as explained in the United States' Motion for Emergency Ruling, Dkt. 117 at 3-5. Black Voters Matter Fund's ("BVMF") arguments to the contrary are meritless. *See* Dkt. 119.

1. The United States brought this suit under Title III of the Civil Rights Act of 1960 ("CRA"), which requires local election officials to "retain and preserve . . . all records and papers which come into [their] possession relating to" voter registration, 52 U.S.C. § 20701, and to turn those records and papers over to the

Attorney General upon a written demand, *id*. § 20703. Title III also creates a simple and expeditious method by which the Attorney General can obtain voter-registration records from uncooperative state officials. *See* 52 U.S.C. § 20705 ("The United States district court . . . shall have jurisdiction by appropriate process to compel the production of such record or paper.").

This suit, therefore, should have taken on an expedited character from the very beginning. A proceeding to enforce a written demand pursuant to Title III is not "an ordinary, traditional civil action with all of its trappings," but rather a "summary proceeding." *Kennedy v. Lynd*, 306 F.2d 222, 225-26 (5th Cir. 1962); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting Fifth Circuit caselaw handed down prior to October 1, 1981, as the law of the Circuit). "The Court, with *expedition*, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down *without delay* for suitable hearing on the matters open for determination." *Lynd*, 306 F.2d at 226 (emphasis added).

2. BVMF ignores the summary nature of these proceedings, *see supra*, and the record in contending that the United States' approach to this case has been "nothing short of lackadaisical." Dkt. 119 at 1.

After the Department of Justice sent a letter to Secretary Raffensperger on August 7, 2025, the Secretary's office responded on August 15, 2025. Dkt. 16-2 at

18. That response stated that the State "require[d] additional time," suggested that the Secretary would comply with the Department's demand, and expected to reply "by late September." *Id.* Then, on October 9—when the federal government was shut down—the Secretary's office emailed to ask for a link to upload the requested data. *Id.* at 20. The Department contacted the Secretary's office again on December 1. *Id.* at 23. The Secretary refused to comply on December 8 (Dkt. 31-5 at 2-6) and the United States brought suit shortly thereafter in the Middle District of Georgia. *United States v. Raffensperger*, No. 5:25-cv-548 (M.D. Ga. Dec. 18, 2025), Dkt. 1.

Although the United States' filing in the Middle District caused some delay (Dkt. 119 at 1), the United States had a good-faith basis for thinking that was the proper venue (No. 5:25-cv-548 (M.D. Ga. Jan. 13, 2026), Dkt. 41), even though the district court ultimately disagreed. Once the action in this Court was filed, the United States filed its Motion to Compel on February 19, 2026. Dkt. 31. With respect, it is the Court, not the United States, that scheduled an in-person hearing on the Motion to Compel for June 3—104 days later. Dkt. 90.[1]

3. BVMF further argues (Dkt. 119 at 2-3) that if the United States were concerned with delay, it would have forgone its Motion to Disqualify and proceeded

---

[1] BVMF attempts to distract by pointing to other lawsuits in different postures proceeding in other courts on different timelines. Dkt. 119 at 2. The United States' actions in those lawsuits are consistent with its position here but, more importantly, irrelevant.

with the scheduled hearing on June 3. This suggestion, quite frankly, is outrageous. Like any party, the United States is entitled to an impartial tribunal—and one that lacks even the appearance of improper bias—when it brings legal claims. *See* 28 U.S.C. § 455(a). The United States is not required to forgo that right because it also seeks expeditious resolution of its claims.

Shortly after learning the reported bases of an appearance of improper bias in this case, the United States filed its Motion to Disqualify. Dkt. 112-1; *see* Dkt. 113 at 3; Dkt. 117 at 4. And "if it turns out that recusal is warranted, [this Court] is generally not permitted to take further action concerning the merits." *Daker v. Warren*, No. 20-12296, 2023 WL 4560224, at *3 (11th Cir. July 17, 2023); *see also id.* ("[T]he district court abused its discretion in dismissing the case prior to ruling on the pending recusal motion."). The United States' desire to not waste the judiciary's, the United States', and Georgia's resources on a substantive hearing concerning motions that the Court likely is not permitted to rule on is not inconsistent with the United States' request for expedited review of the Motion to Disqualify. BVMF's alternative theory—that the United States is engaged in "gamesmanship and judge-shopping," Dkt. 119 at 3—is too baseless to merit further response.

4. BVMF also questions the merits of the United States' Motion to Disqualify. Contrary to BVMF's unsupported claim that "it is difficult to see how any purported attendance at an event relating to the primary election of a district attorney could

give rise to any 'appearance of bias' here," Dkt. 119 at 5, legal ethics experts have agreed that recusal is likely appropriate in this case, *see e.g.*, Jacqueline Thomsen, et al., *Atlanta Judge Risks More Recusal Bids After Judicial Reprimand*, Bloomberg Law (June 2, 2026).[2] The Eleventh Circuit's Judicial Council already reprimanded the "Subject Judge" for such behavior precisely because "the Subject Judge's attendance at the political event—where someone photographed the judge—had the potential to erode public confidence in the independent and non-partisan nature of the judiciary." Order, Judicial Complaint No. 11-25-90212, at 1 (11th Cir. Judicial Council Feb. 11, 2026) (adopting Amended Final Report of the Special Committee ("Final Report")); Final Report 17. Given the narrow issue before the Court in the Motion to Disqualify, it is unclear why BVMF needs more time to address it (Dkt. 119 at 5) when denying the United States' Motion for Emergency Ruling would provide BVMF minimal additional time. *See* Local Rule 7.1(B).

This Court also understands the need to avoid the appearance of bias. Judge Ross has recused herself in the past when her personal relationships gave rise to the appearance of impartiality, such as with her neighbor, former doctor, or staff attorney's daughter's employer. *See* United States Senate Committee on the Judiciary, *Questionnaire for Judicial Nominees* completed by Eleanor Ross, at 23-

---

[2] Available at https://news.bloomberglaw.com/us-law-week/atlanta-judge-risks-more-recusal-bids-after-judicial-reprimand.

24 (Jan. 7, 2014).[3] If those relationships could reasonably lead to the appearance of impartiality, surely one with a political candidate well-known for opposing the President on election integrity issues qualifies too. *See* Final Report 17 (providing that the Subject Judge "assert[ed] that [she] attended only for the purpose of reuniting with former colleagues").

5. BVMF also asserts that the United States has never pointed to specific problems with Georgia's voter rolls. Dkt. 119 at 3. BVMF misunderstands the nature of a Title III proceeding; it is investigatory and is meant precisely to determine *whether* wrongdoing has been committed. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960) ("[T]he function sought to be exercised by the Attorney General is . . . purely investigative."), *aff'd sub. nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1960) (per curiam); Dkt. 31-1, at 24-25. The decision in which BVMF relies for the contrary proposition is now on appeal, *see* Notice of Appeal, *United States v. Galvin*, No. 1:25-CV-13816 (D. Mass. June 2, 2026), Dkt. 97, and contrary to binding precedent in this Court, *see Lynd*, 306 F.2d at 226-27. Whether Georgia has satisfied its list-maintenance obligations is a matter to be assessed after the United States obtains Georgia's statewide voter registration list.

---

[3] Available at https://www.judiciary.senate.gov/imo/media/doc/Eleanor-Ross-Senate-Questionnaire.pdf.

6

6. Finally, BVMF is incorrect about the National Voter Registration Act ("NVRA"). Dkt. 119, at 4-5. First, the United States' ability to bring civil and criminal actions under the statute make clear that the federal government maintains a role in enforcing states' obligations related to list maintenance and handling of registrations. 52 U.S.C. §§ 20510(a), 20511(2); *see Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 13-15 (2013) (making clear that Congress and the federal government play a continuing role in state election administration).

Second, the NVRA's 90-day quiet period, 52 U.S.C. §§ 20507(c)(2), does not foreclose relief. That provision bars states from continuing "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days of a "primary or general election for Federal office." *Id.* That provision poses no barrier to non-"systematic[]" methods of removal by a state. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("[B]y limiting its reach to programs that 'systematically' remove voters from the voter rolls, the 90 Day Provision permits removals based on individualized information at any time."). That provision would not prevent a state like Georgia from investigating and removing ineligible people in an individualized fashion if the United States alerted the State of the possibility that people on their rolls were ineligible to vote.

DATED: June 5, 2026,　　　　　　Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division

/s/ *John Casali*
WILLIAM MOHRMAN
Senior Counsel, Voting Section
MN Bar No. 0168816
JOHN CASALI
MA Bar No. 710821
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.135
Washington, D.C. 20002
Telephone: (202) 316-8087
Email: John.Casali@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

/s/ *John Casali*
WILLIAM MOHRMAN
MN Bar No. 0168816
Senior Counsel, Voting Section
JOHN CASALI
MA Bar No. 710821
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.135
Washington, D.C. 20002
Telephone: (202) 316-8087
Email: John.Casali@usdoj.gov