**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia, <br><br> Defendant. | No. 1:26-cv-485-ELR |

**INTERVENOR-DEFENDANTS COMMON CAUSE AND ROSARIO
PALACIOS' OPPPOSITION TO THE UNITED STATES'
MOTION FOR EMERGENCY RULING**

Intervenor-Defendants Common Cause and Rosario Palacios respectfully submit this opposition to the United States' motion for an emergency ruling, *see* Dkt. No. 117 ("Emergency Mot."), on its motion to recuse, *see* Dkt. No. 112. Put simply, no good cause exists to rush a decision on recusal. But more to the point, DOJ's motion illustrates its actual aims in this and dozens of parallel cases—to usurp Georgia and other states' constitutional and statutory role as the primary administrator of elections, including over voter list maintenance—providing yet more support for the motions to dismiss.

As to the motion to expedite decision on recusal, DOJ identifies no basis to

short-circuit this District's standard briefing schedule or to redirect judicial resources to attend to its motion immediately. All DOJ offers as a purported emergency is the upcoming November general election and the alleged need for Georgia voters "to know that their elections are secure and that noncitizens, deceased individuals, and voters with multiple records are not registered to vote." Emergency Mot. at 3. This provides no basis to deviate from procedural defaults, not least because DOJ has been aware of the November election throughout the history of its request for Georgia's voter file, including in the "several months" pre-suit in which it did not respond to communications from state officials. *See* Decl. of Todd McGowan ¶¶ 11, 13, Dkt. No. 16-2. Moreover, DOJ's own filings seriously undercut any argument for expedited treatment. On the day it filed its recusal motion, DOJ also moved to adjourn a previously scheduled hearing, recognizing that "[i]t is necessary to provide this Court time to assess the Motion (and, if applicable, any filings in opposition thereto)" — even though the putative basis for emergency relief existed as it urged this more measured pace. Mot. to Continue at 2, Dkt. No. 113.

The Eleventh Circuit has warned of the dangers of "[a]utomatic disqualification" every time a recusal motion is filed. *Carter v. West Pub. Co.*, No. 99-11959-EE, 1999 WL 994997, at *2–3 (11th Cir. Nov. 1, 1999) (quotation marks omitted) (noting, with respect to recusal motions, "there is the need to prevent

parties from manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking").[1] Instead, "[r]ecusal decisions . . . are extremely fact driven and must be judged on their unique facts and circumstances," and the Court must take care not to "recuse [herself] on unsupported . . . speculation." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (quotation marks omitted). The Court should undertake the careful inquiry contemplated by the Eleventh Circuit, rather than rush a decision solely because of DOJ's desire to engage in unlawful list maintenance.

Indeed, DOJ's attempts to drum up a basis for an expedited decision drive home its aims in this case and others like it. In its reply to the BVMF Intervenors, DOJ makes clear it intends to perform line-by-line, voter-by-voter list maintenance. *See* Reply in Supp. of Mot. for Emergency Ruling at 7, Dkt. No. 121 ("Emergency Reply"). This is different in kind from the "one purpose only" that DOJ previously gave: "to evaluate Georgia's compliance with the list maintenance provisions of HAVA and the NVRA, and if appropriate, to bring an enforcement action." Br. in Supp. of Mot. to Compel at 7, Dkt. No. 31-1. A civil enforcement

---

[1] This recusal motion is no exception. Even assuming DOJ's factual assertions were true, it is doubtful that the Court's impartiality could reasonably be questioned, *see Carter*, 1999 WL 994997, at *2, based upon an attendance at the event of a person who is neither a party nor a witness in the case, *see McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990) (no abuse of discretion in not recusing based on judge's friendship with the mayor of defendant city, because the mayor "was neither a party nor a witness in this case").

action would, if successful, compel *Georgia* to change any processes that do not comply with the NVRA and HAVA, but it would not allow DOJ to take over list maintenance on the state's behalf. Doing so would be flatly beyond the scope of the NVRA and HAVA, which require states to make a "reasonable effort" to maintain voter lists and remove ineligible voters, 52 U.S.C. §§ 20507(a)(4); 21083(a)(4)(A), but leave the particular procedures used "to the discretion of the State," *id.* § 21085. The NVRA and HAVA "do not contemplate production of the unredacted computerized list to the Attorney General so that he might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list"—exactly what DOJ wishes to do. *United States v. Bellows*, No. 1:25-cv-468-LEW, 2026 WL 1430481, at *8 (D. Me. May 21, 2026); *see also id.* at 7 n.11 ("[W]hatever investigatory purposes may support a Title III records demand, voter list maintenance is not among them.").

The authorities DOJ cites, *see* Emergency Reply at 7, merely establish that the Constitution grants Congress the power to regulate how states conduct elections for federal offices and that Congress exercised that power in the NVRA. They do nothing to support DOJ's assertion of power to conduct list maintenance on behalf of states without statutory authorization. DOJ also claims its list maintenance would not "systematically remove" voters, because it would identify individual voters for removal. But comparing state voter files against DHS's SAVE

4

database, as DOJ plans to do, would be "systematic," no matter who performs the comparison. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014).

DOJ's remaining arguments fare no better. It states that this case "should have taken on an expedited character from the very beginning." Emergency Reply at 2 (citing *Kennedy v. Lynd*, 306 F.2d 222, 225–26 (5th Cir. 1962)). But this ignores the extraordinary context of *Lynd*, including the prolonged abuse of judicial process in the proceedings below, as well as superseding authority such as *United States v. Powell*, 39 U.S. 48, 58 n.18 (1964), and the United States' own decision to proceed through ordinary litigation here. *See* Common Cause Opp. to Mot. to Compel & Reply in Supp. of Their Mot. to Dismiss, at 6–10, Dkt. No. 74. DOJ also offers little to defend its dilatory litigation behavior, including filing in the wrong district and failing to respond to communications from state officials—each of which caused months of delays—beyond complaining of the Court's choice of date for an in-person hearing. *See* Emergency Reply at 2–3; *cf. SEC v. Spartan Secs. Grp., Ltd.*, 164 F.4th 1231, 1270 ("[H]e who comes into equity must come with clean hands." (citation omitted)). And finally, DOJ states it need not identify any issues with Georgia's voter rolls to get emergency relief. *See* Emergency Reply at 6. This is wrong twice over—for one, DOJ's failure to identify any factual basis for its document demand is a reason to dismiss this suit. *See United States v. Amore*, No. 25-cv-639-MSM-PAS, 2026 WL 1040637, at *5 (D.R.I. Apr. 17, 2026); *United States v.*

*Galvin*, No. 25-cv-13816-LTS, 2026 WL 972129, at \*4 (D. Mass. Apr. 9, 2026). For another, if DOJ has no reason to believe Georgia is out of compliance with the NVRA and HAVA, then it has no reason to insist that Georgia must produce the state's voter rolls as soon as possible.

In short, no good cause exists for the Court to grant DOJ's request for emergency treatment. Its purported basis for such relief—the need to usurp Georgia's list maintenance processes in advance of November's election—only reinforces why this case should be dismissed.

Dated: June 8, 2026

Respectfully submitted,
/s/William Hughes

Cory Isaacson, Bar No. 983797
Akiva Freidlin, Bar No. 692290
Briana Futch, Bar No. 007314
AMERICAN CIVIL LIBERTIES UNION OF GEORGIA
P.O. Box 570738
Atlanta, GA 30357
cisaacson@acluga.org
afreidlin@acluga.org
bfutch@acluga.org

Bradley E. Heard, Bar. No. 342209
Jack Genberg, Bar No. 144076
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 550
Washington, DC 20036
bradley.heard@splcenter.org
jack.genberg@splcenter.org

* *admitted pro hac vice*

William Hughes*
Theresa J. Lee*
Jonathan Topaz*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
whughes@aclu.org
tlee@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Carlos A. Andino, Bar No. 241837
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
carlos.andino@splcenter.org

*Counsel for Intervenor-Defendants*
*Common Cause and Rosario Palacios*

6