IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his Official Capacity as Secretary of State for the State of Georgia,<br><br>Defendant. | CASE NO: 1:26-CV-485-ELR |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR EMERGENCY RULING**

The United States moved to disqualify Judge Eleanor Ross from this matter on May 29, 2026 (Dkt. 112) and requested an emergency ruling by June 12, 2026 pursuant to Local Rule 7.2(B) (Dkt. 117). As of the date of this filing, the Court has ruled on neither motion and no party has responded to the Motion to Disqualify. Last week, intervenor-defendant Black Voters Matter Fund ("BVMF") filed an opposition to the United States' Motion for Emergency Ruling (Dkt. 119), to which the United States filed a reply (Dkt. 121). Intervenor-defendants Common Cause and Rosario Palacios (collectively, "Common Cause") have now also filed an opposition to the Motion for Emergency Ruling. Dkt. 122. Common Cause's arguments against expedited review of the Motion to Disqualify misapply the law and (like BVMF's) are meritless.

**<u>Argument</u>**

1. Common Cause first mimics BVMF's argument that if the United States is concerned with delay, it should have proceeded with the June 3rd hearing on the pending motions to dismiss.[1] Dkt. 122 at 2. No litigant should be put to that choice—not in this case or in any other. *See* 28 U.S.C. § 455(a).

Disqualification disputes implicate "the basic integrity of a tribunal" and must be resolved in the first instance. *Daker v. Warren*, No. 20-12296, 2023 WL 4560224, at *3 (11th Cir. July 17, 2023) (citation omitted). A district court "should not delay ruling on a motion to recuse," or take substantive action (like ruling on a motion to dismiss) while a motion to recuse is pending because if recusal is warranted, the court "is generally not permitted to take further action concerning the merits." *Id.* (quoting Wright & Miller, 13D  Fed. Prac. & Proc. § 3553 (3d ed.)). The United States' desire to not waste the judiciary's, the United States', and Georgia's resources on a substantive hearing concerning motions that the Court likely is not permitted to rule on is not inconsistent with the United States' request for expedited review of the Motion to Disqualify.

2. Next, Common Cause urges the Court to "undertake [a] careful inquiry" of the Motion to Disqualify and not "rush a decision." Dkt. 122 at 2-3.  Of course, the

---

[1] Common Cause also mimics BVMF's argument that faults the United States for delays in responding to Georgia officials (Dkt. 122 at 2) but does not mention that delays occurred while the federal government was shut down. *See* Dkt. 121 at 2-3.

United States agrees that "'[r]ecusal decisions . . . are extremely fact driven and must be judged on their unique facts and circumstances,' and the Court must take care not to 'recuse [herself] on unsupported . . . speculation.'" *Id.* at 3 (quoting *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014)). That is why the United States only seeks disqualification *if* Judge Ross is the "Subject Judge." *See* Dkt. 112-1 at 1-2. No one is in a better position than Judge Ross to confirm whether she is the Subject Judge. If speculation that Judge Ross is the Subject Judge is incorrect, she can quickly clear her name in an order denying the Motion to Disqualify so that this litigation can proceed.

Conversely, if Judge Ross is the Subject Judge, the Motion to Disqualify poses no complex facts and circumstances—and indeed, no facts and circumstances unknown to her at all—that necessitate more than two weeks of contemplation. *See, e.g.*, Jacqueline Thomsen, et al., *Atlanta Judge Risks More Recusal Bids After Judicial Reprimand*, Bloomberg Law (June 2, 2026) ("Recusal is likely appropriate in the Georgia voter rolls case, said Charles Geyh, an Indiana University judicial ethics expert, given Willis' role in investigating Trump over the 2020 election.").[2] Federal judges are frequently called to decide much more complex issues on much shorter timelines.

---

[2] Available at https://news.bloomberglaw.com/us-law-week/atlanta-judge-risks-more-recusal-bids-after-judicial-reprimand.

3. While Common Cause's filing is nominally an opposition to the United States' Motion for Emergency Ruling, it also takes the opportunity to challenge the merits of the United States' Motion to Disqualify and this case. *See* Dkt. 122 at 1, 3-4.

In contesting the Motion to Disqualify, Common Cause relies on *McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990) to support its position that "[e]ven assuming DOJ's factual assertions were true, it is doubtful that the Court's impartiality could reasonably be questioned … based upon an attendance at the event of a person who is neither a party nor a witness in the case." Dkt. 122 at 3 n.1. In *McWhorter*, the Eleventh Circuit held that the district judge "did not abuse its discretion in denying the recusal motion based on his friendship and business relations with the Mayor of Birmingham" because the mayor was "neither a party nor a witness in this case," even though the City of Birmingham was a party to the case. 906 F.2d at 679. "*Without more*," his "connection with the City [wa]s insufficient to create the appearance of impropriety." *Id.* (emphasis added). The facts are not analogous to this case, nor does *McWhorter* create a categorical rule that only a personal relationship with a witness or party can create the appearance of impropriety.

Indeed, *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988), forecloses such a rule. In *Parker*, the Eleventh Circuit concluded that an objective

4

observer might reasonably question a judge's impartiality after he thanked his law clerk— the son of a partner of the law firm representing one of the parties—by name for assisting with the case. *Id.* at 1523. The law clerk had taken on an outsized role in the matter, even "h[olding] a hearing with counsel in the absence of the district judge." *Id.* That personal relationship obligated the judge to recuse himself, even though the law clerk's father was not an attorney, party, or witness in the case. *See id.* at 1524-25; Dkt. 122 at 3, n. 1.

4. As for the merits of the case, any such analysis by this Court, before ruling on the Motion to Disqualify, is improper. *See Daker*, 2023 WL 4560224, at *3. But in any event, like BVMF, Common Cause is incorrect about the National Voter Registration Act ("NVRA"). First, the United States' ability to bring civil and criminal actions under the statute makes clear that the federal government maintains a role in enforcing states' obligations related to list maintenance and handling of registrations. 52 U.S.C. §§ 20510(a), 20511(2); *see Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 13-15 (2013) (making clear that Congress and the federal government play a continuing role in state election administration).[3]

---

[3] Though Common Cause accuses the United States of "intend[ing] to perform line-by-line, voter-by-voter list maintenance," Dkt. 122 at 3, it fails to explain how evaluating the accuracy of Georgia's Statewide Voter Registration List ("SVRL") (including by looking to specific entries) is inconsistent (let alone "different in kind") from the purpose the United States has alleged all along: to evaluate Georgia's compliance with its list maintenance requirements. Dkt. 122 at 3. Evaluating Georgia's SVRL and then, if appropriate, attempting to work with Georgia to

Second, the NVRA's 90-day quiet period, 52 U.S.C. § 20507(c)(2), does not foreclose relief. That provision bars *states* from continuing "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days of a "primary or general election for Federal office." *Id.*; *cf.* Dkt. 122, at 4-5 (asserting that "comparing state voter files against DHS's SAVE database … would be 'systematic,' no matter who performs the comparison"). That provision poses no barrier to non-"systematic[]" methods of removal by a state. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("[B]y limiting its reach to programs that 'systematically' remove voters from the voter rolls, the 90 Day Provision permits removals based on individualized information at any time."). That provision would not prevent a state like Georgia from investigating and removing ineligible people in an individualized fashion if the United States alerted the State of the possibility that particular individuals on their rolls were ineligible to vote, even assuming for the sake of argument that *the United States* was engaged in a systematic review.

5. As previously stated, good cause exists to expedite proceedings pursuant to Local Rule 7.2(B). *See* Dkt. 117 at 3-5. In fact, this suit should have taken on an

---

improve its list maintenance or, if necessary, bringing an enforcement action does not amount to "DOJ … tak[ing] over list maintenance on the state's behalf." Dkt. 122, at 4. The contrary case on which Common Cause relies is currently on appeal to the First Circuit. *See* Notice of Appeal, *United States v. Bellows*, No. 1:25-cv-468 (D. Me. June 5, 2026), Dkt. 116.

expedited character from the very beginning. Dkt. 121 at 2. In *Kennedy v. Lynd*, the Circuit Court criticized the district court in one of the cases then on appeal, commenting with exasperation that there was "no indication that this interminable proceeding would ever come to an end." 306 F.2d 222, 227 (5th Cir. 1962). The Circuit Court added that "the disposition [of a Title III enforcement proceeding] would hardly be the prompt one which our decisions require if effective compliance is to be postponed five months." *Id.* at 231. In the present proceeding, the five-month mark will be reached on June 23, 2026.

Though Common Cause would prefer to ignore *Lynd*, *see* Dkt. 122 at 5-6 (citing district court authority incompatible with *Lynd*), that decision is binding authority in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). *Lynd* clearly calls for an expedited proceeding that upholds the Attorney General's broad investigative authority, and nothing in *United States v. Powell*, 379 U.S. 48 (1964), abrogates *Lynd*'s call for summary proceedings. *See Donaldson v. United States*, 400 U.S. 517, 529 (1971) ("*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available."). And despite Common Cause's allegations, none of the United States' tactics thus far could be described as "dilatory." Dkt. 122 at 5; *see generally* Dkt. 121 at 2-3.

## **Conclusion**

There is no reason to delay ruling on the United States' Motion to Disqualify.

The United States' Motion for Emergency Ruling should be granted.

DATED: June 9, 2026                    Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division

/s/ *John Casali*
WILLIAM MOHRMAN
Senior Counsel, Voting Section
MN Bar No. 0168816
JOHN CASALI
MA Bar No. 710821
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.135
Washington, D.C. 20002
Telephone: (202) 316-8087
Email: John.Casali@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

/s/ *John Casali*
WILLIAM MOHRMAN
MN Bar No. 0168816
Senior Counsel, Voting Section
JOHN CASALI
MA Bar No. 710821
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.135
Washington, D.C. 20002
Telephone: (202) 316-8087
Email: John.Casali@usdoj.gov