# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

BRAD RAFFENSPERGER, in his
official capacity as Secretary of State
for the State of Georgia,

    *Defendant*.

Case No. 1:26-cv-00485-ELR

## BVMF INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY

The motion for recusal should be denied. Recusal is appropriate under Section 455(a) only if an "objective, disinterested, lay observer *fully informed of the facts* underlying the grounds on which recusal was sought would entertain a *significant* doubt about the judge's impartiality." *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007) (emphases added) (citing 28 U.S.C. § 455(a)) (further citation omitted). Indeed, "there is as much obligation for a judge *not* to recuse when there is no occasion for h[er] to do so as there is for h[er] to do so when there is," *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (emphasis added) (quoting *United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir. 1992)).

1

1.      DOJ's sole ground for recusal—that Judge Ross purportedly attended an event involving Fulton County District Attorney Fani Willis—is wholly disconnected from the present case, which has *nothing* to do with DA Willis or the office she holds. The same report DOJ cites to support its speculative and implausible connections in fact concluded that the Judge attended the event "only for the purpose of reuniting with former colleagues" and "did not speak publicly, did not make any donation, and did not otherwise engage in political activity." Am. Final Rep. of Special Comm. at 17 (Dec. 10, 2025) ("Comm. Rep.").[1] It explicitly found that the Judge's attendance at that event was "not part of a larger pattern" of political activity. *Id*. Any "objective" and "disinterested" observer who was "fully informed" of these facts would have no doubt—and certainly no "*significant*" doubt—that a judge in these circumstances can impartially preside over this matter, which concerns the legal question of whether Title III of the Civil Rights Act of 1960 entitles DOJ to obtain Georgia's unredacted voter list.

2.      To simply recount DOJ's theory for recusal is to reveal how attenuated it is. DOJ claims that mere attendance at a campaign event in support of DA Willis signals a public "endorsement" of DA Willis and, more broadly, the "*Democratic Party*"; that this supposed endorsement extends to *all major actions* DA Willis has

---

[1] BVMF Intervenors assume for purposes of this motion that Judge Ross is the Subject Judge identified in the Eleventh Circuit's special committee report.

taken in office, including her prosecution of then-former President Trump; and that since this case involves "President Trump's Department of Justice," appearance at that single event, without any endorsement or other related political activity, is enough to require recusal in this matter. DOJ Br. Supp. Mot. to Disqualify at 7–9, Dkt. No. 112-1. That lengthy and convoluted chain of inferences is composed entirely of unsupported speculation and unsound logic: DOJ's theory would disqualify the Judge from hearing *any* case involving the agency—or worse yet, the federal government—under the current administration, notwithstanding the Special Committee's finding that the Judge "did not otherwise engage in political activity," Comm. Rep. at 17. Tellingly, DOJ cites no authority for the blanket recusal it seeks here. *But see In re Lopez-Lukis*, 113 F.3d 1187, 1188 (11th Cir. 1997) (holding that district judge allegedly under criminal investigation by DOJ was not required "to recuse himself from every criminal case on his docket").

Ultimately, this case is about whether the Civil Rights Act entitles DOJ to audit Georgia's unredacted voter list. *See* Compl. ¶¶ 9–10, 26–28. DA Willis's prosecution of President Trump concerned his attempts to overturn the results of the 2020 election in Georgia. *See* DOJ Br. Supp. Mot. to Disqualify at 6. The former is a civil action in which DOJ asks the Court to interpret a federal civil rights statute;

the latter is a state-court criminal action. The two cases have nothing to do with one another.[2]

3.    Even if this case and DA Willis's prosecution of President Trump were related—and they are clearly not—it would not matter: DA Willis is "neither a party nor a witness in this case," so any purported connections between her and Judge Ross cannot require recusal. *McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990) (finding recusal unwarranted based on judge's "friendship and business relationships with the Mayor of Birmingham" in a suit *against the city of Birmingham*). In fact, courts "regularly" hold that "casual, professional relationships—*even those between a judge and a party to a case*—do not warrant recusal." *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 493 (5th Cir. 2024) (emphasis added) (collecting cases).

And though DOJ insists that the mere attendance at this single event amounts to an "endorse[ment]" of the "Democratic Party," such that the Judge cannot preside over a case involving the agency when "a Republican President" is in office, DOJ Br. Supp. Mot. to Disqualify at 1–2, 7–8, courts have consistently rebuffed demands

---

[2] Unable to marshal any meaningful precedent for its argument, DOJ relies on statements in a news article, which in turn rely on DOJ's own recusal motion. *See* DOJ Reply Mot. to Expedite at 5, Dkt. 121 (citing Jacqueline Thomsen, *et al.*, *Atlanta Judge Risks More Recusal Bids After Judicial Reprimand*, Bloomberg Law (June 2, 2026)). Regardless, the article contains no meaningful analysis of the law or facts and should be accorded no weight.

to recuse when faced with generic allegations of partisan bias, *see, e.g.*, *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) ("Judges generally have political backgrounds to one degree or another but must be presumed, absent more, to be impartial."); *Klayman v. Jud. Watch, Inc.*, 744 F. Supp. 2d 264, 277 (D.D.C. 2010) (rejecting claim that a judge being "allegedly connected to and associated with the Democratic party . . . support[s] recusal"). If DOJ were right that a judge's purported "political affiliation" were sufficient for recusal, it "would turn the federal judiciary into a virtually unpeopled desert, as 'it is common knowledge . . . that the first step to the federal bench for most judges is either a history of active partisan politics or strong political connections.'" *United States v. Vazquez-Botet*, No. CR 04-160 (PG), 2005 WL 8163284, at *22 n.32 (D.P.R. Dec. 15, 2005) (quoting *Home Placement Service, Inc. v. Providence Journal Co.*, 739 F.2d 671, 675 (1st Cir. 1984)).

4.      Since DOJ has not come close to establishing that recusal is mandated, Judge Ross has an "obligation . . . *not* to recuse" based on DOJ's "highly tenuous speculation." *In re Moody*, 755 F.3d at 895 (emphasis added); *see also Middlebrooks v. City of Macon-Bibb Cnty., Georgia*, No. 5:23-CV-00083-TES, 2024 WL 555884, at *11 (M.D. Ga. Feb. 12, 2024), *aff'd*, No. 24-10705, 2025 WL 753377 (11th Cir. Mar. 10, 2025) ("Judges must disqualify themselves *only* when the law requires.") (emphasis in original). That is especially true here because DOJ's motives are quite

transparent, and recusal motions may not be used "as a judge-shopping device." *United States v. Beale*, 574 F.3d 512, 519 (8th Cir. 2009); s*ee also Crawford v. Marriott Hotel Servs., Inc.*, No. 1:19-CV-02687-CAP, 2020 WL 13594983, at *1 (N.D. Ga. Oct. 28, 2020), *aff'd sub nom. Crawford v. Marriott Int'l, Inc.*, No. 21-11647, 2021 WL 5054442 (11th Cir. Nov. 1, 2021) ("[J]udge shopping should not be encouraged.") (citation omitted). Accordingly, the Court should deny DOJ's motion.

Dated: June 12, 2026

Adam M. Sparks
Ga. Bar. No. 341578
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
Suite 3500, One Atlantic Center
Atlanta, GA 30309
sparks@khlawfirm.com
Tel: (404) 888-9700
Fax: (404) 888-9577

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Branden D. Lewiston*
Marcos Mocine-McQueen*
Max C. Accardi*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
unkwonta@elias.law
blewiston@elias.law
mmcqueen@elias.law
maccardi@elias.law
Tel: (202) 968-4652

*Counsel for Intervenors Black Voters Matter Fund, CWA Local 3204, and CWA Local 3204 Retired Members Council*

*Appearing pro hac vice

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa. This document was prepared on a computer using Times New Roman font (14 point).

This 12th day of June, 2026.

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta