IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br>v.<br><br>BRAD RAFFENSPERGER, in his Official Capacity as Secretary of State for the State of Georgia,<br><br>Defendant. | CASE NO: 1:26-CV-485-ELR |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISQUALIFY**

The Judicial Council of the Eleventh Circuit found that a "Subject Judge" engaged in judicial misconduct by, among other things, attending a partisan political event[1] that reportedly honored Fulton County District Attorney Fani Willis.  Willis rose to nationwide fame for her failed prosecution of President Trump for allegations related to the 2020 election.  When reports surfaced that Judge Eleanor Ross was the Subject Judge, the United States moved to disqualify Judge Ross from this case about election integrity.  Dkt. 112-1.  There is no longer any doubt that Judge Ross

---

[1] Order, Judicial Complaint No. 11-25-90212, at 1 (11th Cir. Judicial Council Feb. 11, 2026) ("Order") (adopting Amended Final Report of the Special Committee ("Final Report")).

is the Subject Judge:  A letter to Judge Ross from Chief Judge Pryor of the Eleventh Circuit,[2] and then a follow-on letter from Judge Ross herself, [3] confirm that she is.

Nonetheless, Defendant-Intervenor Black Voters Matter Fund ("BVMF") filed an opposition to the United States' motion to disqualify today that "assume[s] for purposes of this motion that Judge Ross is the Subject Judge."  Dkt. 124 at 2 n.1.  Her recusal is necessary, notwithstanding BVMF's attempts to sanitize Judge Ross's misconduct as "mere attendance at a campaign event" and to distort the United States's motion as a demand that Judge Ross recuse herself from all cases involving the federal government.  *See id.* at 2-3.

## Background

On December 10, 2025, the Judicial Council of the Eleventh Circuit adopted an amended Final Report regarding misconduct by an unidentified "Subject Judge."  The Final Report concluded that "the Subject Judge engaged in judicial misconduct by attending a partisan political event."  Final Report at 16.  The "Subject Judge's

---

[2] Suzanne Monyak, *US Judge Ross Apologizes for 'Harmful, Offensive' Behavior*, Bloomberg Law (June 11, 2026), https://news.bloomberglaw.com/us-law-week/judge-ross-sent-new-apologies-to-clerks-after-first-is-shared ("Chief Judge William Pryor of the US Court of Appeals for the Eleventh Circuit sent Ross a letter Wednesday, which he shared with Bloomberg Law[.]"); Ltr. from Chief Judge William Pryor to Judge Eleanor Ross, *Re: Second Inquiry Under Judicial-Conduct Rule 5* (June 10, 2026), available at https://aboutblaw.com/bl04 ("June 10 Ltr.").

[3] Ltr. from Judge Eleanor Ross to former law clerk (June 11, 2026), available at https://aboutblaw.com/bl07 ("June 11 Ltr.").

attendance at the political event—where someone photographed the judge—had the potential to erode public confidence in the independent and non-partisan nature of the judiciary." *Id.* at 17. The Judicial Council ordered the Subject Judge to "issue letters of apology to six former law clerks," Order at 1-2, and imposed certain minimum requirements regarding acknowledgement of wrongdoing in her letters, *see* Final Report at 20 n.92.

On June 10, 2026, Chief Judge Pryor sent a letter to Judge Ross, identifying her as the Subject Judge, investigating further complaints that Judge Ross had failed to comply with that disciplinary order when sending letters to her former clerks. *See* June 10 Ltr. In response, Judge Ross sent another apology to her clerks, noting that she had "not take[n] full accountability for [her] actions." June 11 Ltr. This latest set of developments—particularly Judge Ross's second letter—confirm that Judge Ross is the Subject Judge.

## Argument

Judge Ross's attendance at District Attorney Fani Willis's election party raises questions about her impartiality and necessitates her recusal. *See* 28 U.S.C. § 455(a). An objective reasonable observer would construe Judge Ross's attendance at Willis's party as an endorsement of Willis's election and the Democratic Party. Willis rose to national fame for her failed prosecution of President Trump for his concerns about election integrity in Georgia. Judge Ross's attendance at this event

3

therefore creates an impermissible appearance of bias; a reasonable observer would doubt that Judge Ross can be impartial in this election-integrity case brought by the same President's administration. *See* Dkt. 12-1 at 7-11. The Court should reject BVMF's counterarguments.

*First*, BVMF tries to downplay Judge Ross's misconduct by stating that she "attended the event only for the purposes of reuniting with former colleagues" and that her misconduct was "not part of a larger pattern." Dkt. 124 at 2 (quotation marks omitted). Even if that is true, the Judicial Council found that her conduct "had the potential to erode public confidence in the independent and non-partisan nature of the judiciary" and inflict a "significant" "potential for harm." Final Report at 17. That harm has come to pass. At the time Judge Ross attended Willis's event, it was "a mere matter of good fortune that [her] attendance did not garner media attention." *Id.* There now has been considerable media coverage of Judge Ross's misconduct (even independent of the United States' Motion to Disqualify), leading objective observers to question her impartiality. *See, e.g.*, Aliza Shatzman, *What the Latest Judicial Sex Scandal Tells Us About a Broken System*, Slate (June 8, 2026) ("Litigants before Judge Ross should question her impartiality and judgment.")[4]; Jacqueline Thomsen, et al., *Atlanta Judge Risks More Recusal Bids After Judicial*

---

[4] Available at https://slate.com/news-and-politics/2026/06/judicial-sex-scandal-impeachment-broken-system.html.

*Reprimand*, Bloomberg Law (June 2, 2026) ("Recusal is likely appropriate in the Georgia voter rolls case, said Charles Geyh, an Indiana University judicial ethics expert, given Willis' role in investigating Trump over the 2020 election.").[5]

*Second*, BVMF raises the slippery-slope argument that the United States' "theory would disqualify the Judge from hearing *any* case involving … the federal government … under the current administration." Dkt. 124 at 3. This grossly mischaracterizes the United States' position. The United States does not argue that Judge Ross's misconduct necessitates blanket recusal in cases unrelated to election integrity. The United States argues only that Judge Ross must recuse from *this* election-integrity case because Judge Ross's attendance at Willis's campaign event would make a reasonable observer question her impartiality in an election integrity case brought by President Trump's administration. *See generally* Dkt. 112-1. Thus, while a reasonable observer would interpret Judge Ross's attendance at Willis's event as at least a partial endorsement of the Democratic Party—ordinary people rarely attend victory celebrations for political parties they oppose—her endorsement does not require recusal from all cases brought by the United States when a Republican President (or even this President) is in office. *Contra* Dkt. 124 at 4-5.

---

[5] Available at https://news.bloomberglaw.com/us-law-week/atlanta-judge-risks-more-recusal-bids-after-judicial-reprimand.

Indeed, the United States has not filed recusal motions in any of its many other cases pending before Judge Ross.

*Third*, BVMF falsely portrays the United States as demanding recusal because of Judge Ross's "purported connections" to Willis, who is "neither a party nor a witness in this case." Dkt. 124 at 4 (quoting *McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990)). There is no categorical rule, however, that only a personal relationship with a witness or party can create the appearance of impropriety. In *McWhorter*, the Eleventh Circuit held that the district judge "did not abuse its discretion in denying the recusal motion based on his friendship and business relations with the Mayor of Birmingham" because the mayor was "neither a party nor a witness in this case," even though the City of Birmingham was a party to the case. 906 F.2d at 679. "*Without more,*" his "connection with the City [wa]s insufficient to create the appearance of impropriety." *Id.* (emphasis added).

*Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988), forecloses BVMF's interpretation of *McWhorter* that only a personal relationship with a witness or party can create the appearance of impropriety. In *Parker*, the Eleventh Circuit concluded that an objective observer might reasonably question a judge's impartiality after he thanked his law clerk—the son of a partner of the law firm representing one of the parties—by name for assisting with the case. *Id.* at 1523. The law clerk had taken on an outsized role in the matter, even "h[olding] a hearing

with counsel in the absence of the district judge." *Id.* That personal relationship obligated the judge to recuse himself, even though the law clerk's father was not an attorney, party, or witness in the case. *See id.* at 1524-25.

Of course, this Court understands the need to avoid the appearance of bias. Judge Ross has recused herself in the past when her personal relationships—such as with her neighbor, former doctor, or staff attorney's daughter's employer—gave rise to the appearance of impartiality. *See* United States Senate Committee on the Judiciary, *Questionnaire for Judicial Nominees* completed by Eleanor Ross, at 23-24 (Jan. 7, 2014).[6] If those relationships could reasonably lead to the appearance of impartiality, surely one with a political candidate well-known for opposing the President on election integrity issues qualifies too. *See* Final Report 17 (providing that the Judge Ross "assert[ed] that [she] attended only for the purpose of reuniting with former colleagues"). The mere "friendship, or the appearance of [a] friendship" with Willis might not require recusal. *See Cheney v. United States District Court for District of Columbia*, 541 U.S. 913, 920 (2004) (mem. of Scalia, J.). But that's not the point. Befriending an elected official is not per se judicial misconduct. Attending that official's partisan political events is judicial misconduct, *see* Final Report at 16-17, and such misconduct demands recusal here.

---

[6] Available at https://www.judiciary.senate.gov/imo/media/doc/Eleanor-Ross-Senate-Questionnaire.pdf.

*Fourth*, BVMF accuses the United States of "judge-shopping." Dkt. 124 at 5; *see id.* at 5-6 ("DOJ's motives are quite transparent"). Its accusation obscures the distinction between invoking the right to an unbiased judge and demanding a favorable one. Judge-shopping consists of unscrupulous "attempts to manipulate the random case assignment process" and is "subject to universal condemnation." *In re BellSouth Corp.*, 334 F.3d 941, 958 (11th Cir. 2003) (internal quotation marks omitted). Some examples of judge-shopping include "[s]uing the assigned judge to force his disqualification," "[v]oluntarily dismissing and then refiling a case," and "[r]etaining counsel with a personal connection to the judge to force recusal." *Boe v. Marshall*, 767 F. Supp. 3d 1226, 1274 (M.D. Ala. 2025). In contrast, a recusal motion seeks to vindicate a litigant's right to a fair hearing before a judge unmarred by the appearance of bias. *See Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883-84 (2009). Where a litigant has "some reasonable basis for a recusal motion," as the United States does, that motion does not amount to judge-shopping just because the requested remedy is reassignment of the case to a new judge. *Carter v. West Pub. Co.*, No. 99-11959-EE, 1999 WL 994997, at *10 (11th Cir. Nov. 1, 1999). The judicial-recusal statute "avoid[s] the pitfalls of judge-shopping" by requiring such a basis. *Id.*

## Conclusion

The United States' Motion to Disqualify (Dkt. 112) should be granted.

DATED: June 12, 2026                      Respectfully submitted,

                                          HARMEET K. DHILLON
                                          Assistant Attorney General
                                          Civil Rights Division

                                          JESUS A. OSETE
                                          Principal Deputy Assistant Attorney General
                                          Civil Rights Division

                                          ERIC V. NEFF
                                          Acting Chief, Voting Section
                                          Civil Rights Division

                                          /s/ *William Mohrman*
                                          WILLIAM MOHRMAN
                                          Senior Counsel, Voting Section
                                          MN Bar No. 0168816
                                          JOHN CASALI
                                          MA Bar No. 710821
                                          Trial Attorney, Voting Section
                                          Civil Rights Division
                                          U.S. Department of Justice
                                          4 Constitution Square
                                          150 M Street NE, Room 8.135
                                          Washington, D.C. 20002
                                          Telephone: (202) 368-6597
                                          Email: William.Mohrman@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

/s/ *William Mohrman*
WILLIAM MOHRMAN
MN Bar No. 0168816
Senior Counsel, Voting Section
JOHN CASALI
MA Bar No. 710821
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.135
Washington, D.C. 20002
Telephone: (202) 368-6597
Email: William.Mohrman@usdoj.gov