**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

THE UNITED STATES OF AMERICA,

Plaintiff,

v.

BRAD RAFFENSPERGER, *in his Official Capacity as Secretary of State for the State of Georgia,*

Defendant.

Civil Action No.
1:26-cv-00485-VMC

## ORDER

This matter is before the Court on the following Motions: Defendant Brad Raffensperger's Motion to Dismiss (Doc. 16), Intervenor-Defendants'[1] Motions to Dismiss (Docs. 22; 23; 80), and Plaintiff United States of America's Cross Motion to Compel Production of Federal Election Records ("Motion to Compel," Doc. 31).[2]

[1] The three Intervenor-Defendants are: 1) Common Cause and Rosario Palacios (collectively, "Common Cause"); 2) Black Voters Matters Fund, Communication Workers of America Local 3204, and Communication Workers of America Retired members Council (collectively "BVMF"); and 3) the National Association for the Advancement of Colored People, National Association for the Advancement of Colored People Georgia State Conference, Georgia Coalition for the People's Agenda, and Quinette Westbrooks (collectively, "NAACP").

[2] After reviewing the filings, the Court determines that a hearing is not necessary. *See Cooley v. Jefferson Cap. Sys., LLC*, No. 1:22-cv-00510-SEG-RDC, 2022 WL 17920538, at *1 (N.D. Ga. Oct. 18, 2022) ("District courts have broad authority to manage their dockets "'with a view toward the efficient and expedient resolution of cases.'") (quoting *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)).

For the reasons given below, Defendant's and Intervenor-Defendant BVMF's Motions to Dismiss are granted in part and Plaintiff's Motion to Compel is denied.

**Background**

Because this case is before the Court on Motions to Dismiss, the following facts are largely drawn from Plaintiff's Complaint and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964). However, to provide more context that is missing from Plaintiff's Complaint, the Court also incorporates the Declaration of Charlene S. McGowan, including its exhibits, that was attached to Defendant's Motion to Dismiss (Doc. 16-2 at 2–8 ¶¶ 1–22).[3]

[3] Ordinarily, the evidence the Court considers on a motion to dismiss should be limited to the four corners of the complaint because otherwise the motion would be converted to a motion for summary judgment. *See* 5C Charles Allen Wright et al., Federal Practice and Procedure § 1366 (3d ed. 1998) (noting that "whenever outside matters are presented to and not excluded by the court, the matter will be considered by the appellate court as one for summary judgment"). But the Eleventh Circuit has recognized an exception to this general rule; "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Plaintiff did not raise an objection to McGowan's affidavit; indeed, three of the letters referenced in McGowan's affidavit are attached to Plaintiff's Motion to Compel. (Docs. 31-3 – 31-5). Therefore, the Court finds that incorporating McGowan's affidavit and the attached exhibits is appropriate.

## I. Factual Background

On July 9, 2025, Plaintiff contacted Defendant Brad Raffensperger, the Secretary of State of Georgia ("Defendant Raffensperger" or "Secretary"), seeking information to determine Georgia's compliance with federal election law. (*See* Docs. 1 ¶ 19; 16-2 at 3 ¶ 3).[4] Specifically, the Department of Justice ("DOJ") first initiated a video conference with the Secretary's office requesting a copy of Georgia's statewide voter registration list ("SVRL"). (Docs. 16-1 at 13; 16-2 at 3 ¶ 3). During this conversation, the DOJ informed Georgia officials that it needed Georgia's SVRL to help it with maintenance and to run the list through the "Department of Homeland Security's Systematic Alien Verification for Entitlements (SAVE) database." (Doc. 16-2 at 3 ¶ 4).[5] The DOJ also requested that the Secretary's staff email the entire unredacted Georgia SVRL, including the voter's history, driver's license number, social security numbers and full dates of birth, explaining that the National Voter Registration Act ("NVRA") entitled it to this information. (*Id.* ¶¶ 5–6).[6]

---

[4] Citations to page numbers refer to the pages in the relevant document as numbered by the CM/ECF system.

[5] The United States Attorney General then apparently sent a letter that same day to Defendant Raffensperger requesting the same information. (*See* Doc. 1 ¶ 19).

[6] The NVRA, Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at 52 U.S.C. §§ 20501-20511 (2012)) "requires state election officials to make a reasonable effort to remove certain ineligible registrants from the voter rolls." *Bellitto v. Snipes*, 935 F.3d

On August 7, 2025, the Deputy Assistant Attorney General sent a letter to Defendant Raffensperger renewing the July 9, 2025, request. (*See* Docs. 1 ¶ 20; 16-2 at 3–4 ¶ 7). Specifically, the DOJ again requested Georgia's unredacted SVRL within fourteen days with all fields, such as the voter's social security number; dates of birth; and other identifying information, visible. (*See* Doc. 1 ¶ 20). In making this second request, the DOJ cited only the NVRA and the Help America Vote Act ("HAVA") and directed Defendant Raffensperger to send the voter registration list, with all fields visible, through encrypted email or through the DOJ's "secure file-sharing system." (*See* Docs. 1 ¶ 21; 16-2 at 3–4 ¶ 7).[7]

Thereafter on August 14, 2025, the United States Attorney General sent a second letter "clarifying the request in the August 7 letter." (Doc. 1 ¶ 22). In this letter, the DOJ again requested Georgia's unredacted SVRL with all fields visible, and cited, for the first time, Title III of the Civil Rights Act ("CRA") and other

---

1192, 1194 (11th Cir. 2019). The NVRA also requires states to maintain "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," for at least two years, and to make such records available for public inspection. 52 U.S.C. § 20507(i)(1).

[7] The HAVA, Pub. L. No. 107-252, 116 Stat. 1666 (codified at 52 U.S.C. §§ 20901 to 21145 (2002)) requires states to implement a centralized "interactive computerized statewide voter registration list" and maintain that list by removing ineligible voters. *See* 52 U.S.C. § 21083(a)(1)(A), (a)(2)(B). Additionally, under HAVA, states are left to determine "[t]he specific choices on the methods of complying with the requirements," of the statute. *See id.* § 21085.

federal statutes it believed entitled it to Georgia voters' personal identifying information.[8] (Docs. 1 ¶¶ 22–23; 16-2 at 4 ¶ 8 and at 29). The next day, August 15, 2025, Georgia's Secretary of State General Counsel responded to the DOJ's August 7th letter explaining that the Secretary's office was gathering all necessary information and outlining the process used in Georgia for voter list maintenance. (Doc. 16-2 at 4 ¶ 9). However, this response further explained to the DOJ that the Secretary's office was currently conducting list-maintenance activities and wanted to complete this process before providing the voter registration list so that the DOJ would have an "updated list to review." (*Id.* ¶ 10).

Two months passed with no contact until October 9, 2025, when the Secretary's office contacted the DOJ notifying it that it was ready to send all necessary data files, and requesting a link with instructions to the "DOJ's secure transfer site." (*Id.* at 4–5 ¶¶ 11–12). On December 1, 2025, nearly two months later, the DOJ emailed the Secretary's "general inbox and Elections Director" with a draft memorandum of understanding ("MOU") regarding the voter information transfer. (*See* Doc. 16-2 at 5 ¶¶ 13–14 and at 31–39). Included in the MOU were, among other things: (1) citations to NVRA, HAVA, and the CRA as the DOJ's authority for requesting Georgia's unredacted SVRL; (2) an explanation that the

[8] Title III of the Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 88 (1960) is codified at 52 U.S.C. §§ 20701-20706.

requested materials were to assess, test, and analyze the states' voter registration list maintenance and compliance with federal law; and (3) an additional citation to the Systems of Records Notice in support of the DOJ's argument that it was complying with the Privacy Act. (Doc. 16-2 at 5 ¶ 15). Finally, the MOU explained that the Secretary was required to transfer all data to the DOJ's contractor and included an agreement that if the DOJ discovered any issues or inconsistencies in Georgia's SVRL, the Secretary was required to remove the records and resubmit all data to the DOJ once more. (*Id.* at 5–6 ¶¶ 16–17). The MOU requested full execution within seven days of receiving it and full transfer of all data five days from the date of execution. (*Id.* at 33).

The next day, the Secretary's General Counsel requested instructions to upload Georgia's voter information and explained that complying with the MOU "would make the requested timeline unreasonable." (*Id.* at 6 ¶ 19). The DOJ responded the next day by saying that it would not send an upload link until the MOU was signed. (*Id.* ¶ 20). Thereafter on December 8, 2025, the Secretary's General Counsel, sent a letter to the DOJ explaining, among other things, that although it would provide Georgia's voter registration data and SVRL, it would only do so by excluding all sensitive information related to Georgia voter identities in compliance with O.C.G.A. § 21-2-225(b). (*See* Docs. 1 ¶ 24; 16-2 at 54). After sending this letter, the Secretary's Election Director "sent a link for the DOJ to

download the entire voter list with all fields that may be publicly disclosed under law," redacting voters' dates of birth, social security numbers, driver's license numbers, and "other information designated confidential by statute." (Doc. 16-2 at 7 ¶ 22 and at 57).

**II. Procedural History**

In response to Defendant Raffensperger's December 8th letter and disclosure of a redacted version of Georgia's SVRL and other voter data, Plaintiff filed an action in the Middle District of Georgia on December 18, 2025. (*See* Doc. 16-3). That case was then dismissed without prejudice on January 23, 2026, for lack of subject matter jurisdiction. (*Id.* at 9). The district court explained that the Northern District of Georgia had subject matter jurisdiction over the action because the Attorney General's demand was made to an office located in the Northern District of Georgia and the demanded records were located in the Northern District as well. (*Id.* at 8–9).

Plaintiff then refiled the action in this Court bringing a single claim under Title III of the Civil Rights Act. (*See* Doc. 1 ¶¶ 26–28). Specifically, Plaintiff alleges that in response to its August 14, 2025, written demand "for [the unredacted] production of specific electronic records pursuant to 52 U.S.C. § 20703," Defendant Raffensperger failed to "provide to the Attorney General the current electronic copy of Georgia's computerized statewide voter registration list, with all fields,"

such as a registrant's full name, address, driver's license number, last four-digits of their social security number and date of birth visible. (*Id.*). Plaintiff further contends that this refusal violates Title III of the CRA "as required by 52 U.S.C. § 20703." (*Id.* ¶ 28).

In response, Defendant Raffensperger, along with the Intervenor-Defendants ("Intervenors") filed Motions to Dismiss. Plaintiff filed its response in opposition along with its Motion to Compel. The Court assesses the Parties' arguments below.

## Legal Standard

### I. Applicability of the Federal Rules of Civil Procedure

As a threshold matter, the Parties disagree on whether the Federal Rules of Civil Procedure even apply to this dispute. Plaintiff argues that the Federal Rules of Civil Procedure do not apply because it has brought this case under Section 305 of the CRA which affords a "special statutory proceeding to compel production of federal election records" to which the Federal Rules are inapplicable. (*See* Doc. 31-1 at 24) (citing *Kennedy v. Lynd*, 306 F.2d 222, 225–26 (5th Cir. 1962)). In other words, Plaintiff argues that in applying for an order under Title III of the CRA, it did not commence "an ordinary, traditional civil action with all of its trappings," . . . but a summary proceeding that "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." (*Id.* at 19) (quoting *Lynd*, 306 F.2d at

225–26). Furthermore, Plaintiff asserts that because it has commenced this special proceeding, the Court's role in reviewing its demand is limited. (*Id.* at 19–20).

First, even if the Court followed the guidance in *Lynd*, the Court's role in reviewing the Parties' dispute would be the same. *Lynd* explained that in a summary proceeding, although the court plays a limited role, when "a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within this broad statutory classification of all records and papers . . . the Court would, of course, be open for its determination." 306 F.2d at 226. The Parties genuinely dispute whether Title III of the CRA entitles Plaintiff to an unredacted version of Georgia's SVRL. Therefore, even under *Lynd*, the Court would have the same role. *See U.S. Wis. Elections Comm'n*, 833 F. Supp. 3d 949, 953 (W.D. Wis. 2026) (declining to resolve the question of whether the Federal Rules of Civil Procedure apply to a case brought under Title III of the CRA because "the court's analysis of the dispositive issue would be the same either way.").

Furthermore, the Court agrees with Defendant and Intervenors that the Federal Rules of Civil Procedure apply to this proceeding because the Supreme Court has said that those Rules apply where a statute contains "no provision specifying the procedure to be followed in invoking the court's jurisdiction." (Doc. 68 at 7) (quoting *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964)); (*see also* Docs. 70 at 6–7; 74 at 11–12). The Supreme Court's decision in *Powell*, issued two years

after *Lynd*, made clear that the Federal Rules of Civil Procedure apply where a statute contemplates "an appropriate process" without defining what that process is.[9] *United States v. Powell*, 379 U.S. at 58 n.18. Specifically, in *Powell*, two provisions of the Internal Revenue Code conferred jurisdiction on district courts "by appropriate process to compel," but because these statutes "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Supreme Court concluded that the Federal Rules of Civil Procedure appl[ied]." *Id.*[10]

Title III of the CRA states that "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. Thus, like the provisions of the Internal Revenue Code at issue in *Powell*,

---

[9] Although Plaintiff argues that *Powell* is distinguishable because unlike the CRA, the statutes at issue in that case contained language limiting the Attorney General's authority, Defendant Raffensperger is correct that this difference has no bearing on whether the Federal Rules of Civil Procedure apply. (*See* Docs. 31-1 at 22; 68 at 8).

[10] Specifically, the virtually identical provisions stated, "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found *shall have jurisdiction by appropriate process to compel* such attendance, testimony, or production of books, papers, or other data.'" *Powell*, 379 U.S. at 52 n.10 (emphasis added).

the CRA confers jurisdiction on district courts "by appropriate process to compel." And like the provisions at issue in *Powell*, the CRA does not specify the procedures to be followed. Therefore, consistent with several district courts across the country, the Court agrees that because Title III of the CRA is silent as to what the "appropriate process to compel" is, the Federal Rules of Civil Procedure apply to this action. *See e.g.*, *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092, 1102–03 (D. Or. 2026); *United States v. Amore*, 831 F. Supp. 3d 149, 155 (D.R.I 2026); *United States v. Evans*, No. 25-4403, 2026 WL 226774, at *4 (D.D.C. Aug. 6, 2026); *United States v. Oliver*, No. 1:25-cv-01193, 2026 WL 2031479, at *7 (D.N.M. July 14, 2026).

**II. Legal Standard for Motions to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual

allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555.

**Discussion**

Although the Parties raise numerous issues,[11] the Court's analysis is limited to what is actually in dispute. Plaintiff is seeking a declaration that Defendant's refusal to provide unredacted records violates Title III of the CRA and an order directing Defendant Raffensperger to provide an unredacted copy of Georgia's SVRL. (Doc. 1 at 9). In its Motion to Dismiss, Defendant makes several arguments as to why Plaintiff is not entitled to relief. (*See generally* Doc. 16-1). The Court finds that the first issue raised by Defendant, that the CRA does not preempt Georgia's voter privacy law, is dispositive, particularly given that Defendant largely complied with Plaintiff's demand for voter records. Therefore, the Court does not need to reach the other issues raised by the Parties regarding the sufficiency of Plaintiff's demand and whether Plaintiff has violated other federal laws. The Court will limit its focus to whether Plaintiff is entitled to what it does not yet have: the unredacted list of Georgia's SVRL.

[11] (*See* Docs. 16-1 at 19–28; 22-1; 23–33; 23-1 at 15–30; 31-1 at 24–53; 80-1 at 16–31; 89).

## I. The Text of the Relevant Statutes

Defendant Raffensperger disputes that the United States is entitled to an *unredacted* version of Georgia's SVRL because under Georgia law—specifically O.C.G.A. § 21-2-225(b)—private information such as a voter's driver's license and social security number cannot be disclosed. (*See id.* at 19–22). Section O.C.G.A § 21-2-225(b), in relevant[12] part, states:

> Except as provided in Code Section 21-2-225.1, all data collected and maintained on electors whose names appear on the list of electors maintained by the Secretary of State pursuant to this article shall be available for public inspection with the exception of bank statements submitted pursuant to subsection (c) of Code Section 21-2-220 and subsection (c) of Code Section 21-2-417, the month and day of birth, the social security numbers, email addresses, and driver's license numbers of the electors, and the locations at which the electors applied to register to vote, which shall remain confidential and shall be used only for voter registration purposes. . . .

O.C.G.A. § 21-2-225(b).

Plaintiff relies on the CRA. The CRA is one in a collection of statutes Congress enacted to allow the federal government to investigate allegations of voting discrimination by giving the United States Attorney General "access to local voting records" to aid in its investigation of discrimination and assessment of states' compliance with federal election law. *See South Carolina v. Katzenbach*, 383

[12] The Court discusses the omitted portion of the statute below in note 17.

U.S. 301, 313 (1966); *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026). The relevant provisions of the CRA state:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, *all records and papers* which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

52 U.S.C. § 20701 (emphasis added). The CRA also mandates that:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

*Id.* § 20703.

In the next section, the Court addresses why Plaintiff's argument that Title III of the CRA preempts O.C.G.A. § 21-2-225(b), which the Court refers to as Georgia's voter privacy law, is incorrect. (*See* Doc. 31-1 at 42–45).

## II. Federal Law Does Not Preempt Georgia's Voter Privacy Law

The Supremacy Clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. In accordance with this language, the Supreme Court has "long recognized that state laws that conflict with federal law are 'without effect.'" *Carson v. Monsanto Co.*, 92 F.4th 980, 989 (11th Cir. 2024) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)). The Supreme Court has implemented the Supremacy Clause through its preemption doctrines, and "has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004). "Express preemption occurs when, explicitly in statutory text, Congress manifests its intent to preempt state law." *Carson*, 92 F.4th at 989. Field preemption, also referred to as "occupying the field" occurs when "federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it." *Cliff*, 363 F.3d at 1122. Finally, conflict preemption arises when: (1) "it is impossible for a private party to comply with both state and federal law" or (2) the state law "stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (citations and quotation omitted).

Although Plaintiff does not explicitly say so, its arguments implicate express or conflict preemption.[13]

**A. Title III of the CRA Does Not Preempt Georgia's Voter Privacy Law**

First, Plaintiff argues that the phrase "all records" found in 52 U.S.C. §§ 20701 and 20703 includes both public and private records and if Congress intended to limit all records to only public records, it would have done so. (*See* Doc. 31-1 at 42–44). In response, Defendant and Intervenors first contend that furnishing redacted records does not conflict with the phrase "all records" found in 52 U.S.C. §§ 20701 and 20703. (*See* Doc. 16-1 at 21) (observing "requests under

[13] Field preemption does not apply. The Elections Clause of the United States Constitution instructs that: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations[.]" U.S. Const. art. I, § 4, cl. 1. This language militates against a finding of field preemption because Congress cannot "occupy the field" where "[t]he United States Constitution through the Elections Clause entrusts the broad, regulatory authority over elections to the states." *Oregon*, 828 F. Supp. 3d at 1095 (citing *Smiley v. Holm*, 285 U.S. 355, 366 (1932) ("[T]imes, places and manner . . . embrace authority in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of elections returns.")).

the CRA are . . . for 'public records'") (quoting *Lynd*, 306 F.2d at 231); (*see also* Docs. 68 at 14–15; 74 at 26; 81 at 12).

To resolve this issue, the Court looks to *Lynd*, as the Parties did, and ultimately agrees with Defendant and BVMF. In *Lynd*, the Fifth Circuit reviewed several lower court orders addressing limitations on the disclosure of voter records pursuant to Title III of the CRA.[14] 306 F.2d at 227–231. In one instance, the appellate court reversed a district court's order requiring that inspection and copying of the records should not occur until after September 1, 1962, presumably the date of the primary election. *Id.* at 230–31. The *Lynd* court found that such a delay was not required, in part because the request was for "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers and effects." *Id.* at 231. Although Plaintiff points to a different portion of *Lynd*,[15] the Court finds that the quoted language clearly indicates that the *Lynd* court was referring to public records. Because *Lynd* did not address

---

[14] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[15] Plaintiff relies on a portion of *Lynd* where the court stated, "All means all." (Doc. 31-1 at 44) (citing *Lynd*, 306 F.2d at 230). In making this statement the court was addressing the lower court's erroneous refusal to require the present state official to produce records prepared or compiled by his predecessors. Here, Defendant has only limited its production to what must be kept confidential under Georgia's voter privacy law.

confidential records, the Court cannot agree that it sweeps as broadly as Plaintiff suggests. In other words, Defendant can comply with Title III of the CRA even if it only produces a redacted SVRL.

Moreover, Plaintiff's argument that Congress could have limited all records to only public records but chose not to, misses the mark. Based on the text of the CRA, including what was cited above, there is no explicit manifestation of Congress's intent to preempt states' voter privacy laws. *See* 52 U.S.C. §§ 20701–20706. Indeed, the CRA does not refer to state laws at all. Since Congress did not explicitly say that it was preempting state law, the Court will not read preemption into Title III. (*See* Doc. 23-1 at 22–23) ("The Eleventh Circuit and the Supreme Court have made clear that courts must 'presume that Congress does not cavalierly pre-empt state law.'" (citing *Nat'l Ass'n of State Util. Consumer Advocs. v. FCC*, 457 F.3d 1238, 1252 (11th Cir. 2006) *opinion modified on denial of reh'g*, 468 F.3d 1272 (11th Cir. 2006) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)))). Therefore, Title III of the CRA does not preempt Georgia's voter privacy law such that Defendant must produce an unredacted version of Georgia's SVRL. *Oregon*, 828 F. Supp. 3d at 1108 ("Because Title III does not require Defendants to disclose the Sensitive Voter Data, Plaintiff fails to state a claim that Oregon violated Title III by failing to produce an unredacted copy of its voter registration list.").

**B. Georgia's Voter Privacy Law Does Not Conflict with Federal Law**

Next, Plaintiff argues that without an unredacted version of Georgia's SVRL, Title III would be "eviscerate[d]" and that the "Attorney General can only meaningfully investigate and enforce list maintenance requirements under HAVA and the NVRA by having access to the voter identification numbers," which includes that voter's social security number, driver's license number or their HAVA identifying number. (*See* Doc. 31-1 at 44). Moreover, Plaintiff asserts that having the voter's private information "is necessary to identify duplicate registration records, registrants who have moved, and registrants who have died, or who are otherwise no longer eligible to vote in federal elections." (*Id.* at 45).

The Court is not persuaded by any of Plaintiff's arguments. As Plaintiff noted, Title III "requires officers of election to preserve, and on request, to produce registration records pertaining to federal elections." (*Id.* at 24) (citing *Lynd*, 306 F.2d at 226). The Court has already found that Defendant did not violate Title III of the CRA by not producing an unredacted version of the SVRL; therefore, Title III of the CRA has not been eviscerated.

Defendant and Intervenors assert that investigating NVRA and HAVA compliance is not frustrated by providing redacted records because (1) both statutes only place procedural requirements on states to make reasonable efforts to remove ineligible voters from its voter rolls, (2) NVRA does not require the

disclosure of sensitive information, and (3) Congress could not have intended, when it passed HAVA, nearly four decades after Title III of the CRA, to allow Plaintiff to use the CRA to access sensitive information when the CRA itself does not entitle Plaintiff to this kind of information. (*See* Docs. 16-1 at 21 n. 15; 23-1 at 24–26; 70 at 15–17; 74 at 27; 80-1 at 30). The Court agrees with Defendant and Intervenors.

Neither NVRA nor HAVA requires disclosure of sensitive information. Although NVRA contains a disclosure provision, it "does not require the disclosure of sensitive information that implicates special privacy concerns." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."). Moreover, while HAVA requires the inclusion of private information to create a compliant SVRL, it does not have a provision mandating disclosure of this private information. *See Oregon*, 828 F. Supp. 3d at 1101 ("HAVA grants the Attorney General the ability to bring a civil action for enforcement, not disclosure. Congress knows how to include disclosure provisions, as it did so in both the NVRA and Title III."). It would not make sense for the Court to endorse Plaintiff's reliance on the general language of Title III of the CRA, which was enacted decades earlier, to get information that is not specifically subject to disclosure by the NVRA

or HAVA. In sum, Plaintiff has not demonstrated how Georgia's voter privacy law conflicts with Title III of the CRA, the NVRA, or HAVA.

Finally, in responding to Plaintiff's request, Defendant provided a letter containing "detailed information showing Georgia's substantial voter list maintenance efforts, . . . [a] sample of public announcements documenting the Secretary of State's list maintenance activities, [a] list of registrations canceled between September 2023 to October 2025 . . ., and indicated that it would send an updated voter file after updating its data in response to information received from the Department of Homeland Security. (Doc. 16-2 at 57–58). Plaintiff also acknowledges that Defendant shares information with other states and the District of Columbia "to facilitate their compliance with federal list maintenance requirements."[16] (Doc. 31-1 at 45). Defendant Raffensperger's efforts demonstrate that it is possible to comply with both Georgia's voter privacy law and federal laws related to voter records. Therefore, federal law does not preempt Georgia's voter privacy law.[17]

---

[16] Defendant agrees that it shares information through the Electronic Registration Information Center ("ERIC") but that it "never transmits unredacted private voter information," and instead uses "a one-way cryptographic hashing process . . . which makes the confidential fields unreadable to anyone reviewing them." (Doc. 69 at 5–6). Thus, it appears that Defendant is still complying with Georgia law when it shares information through ERIC.

[17] Nor is the exception in Georgia's voter privacy law applicable. O.C.G.A. § 21-2-225(b) permits disclosure of confidential information to agencies of the federal

**Conclusion**

For the foregoing reasons, it is

**ORDERED** that Defendant Raffensperger and Intervenor–Defendant's BVMF's Motions to Dismiss (Docs. 16, 23) are **GRANTED IN PART** as set forth in this Order. Intervenor–Defendants' Common Cause and NAACP's Motions to Dismiss (Docs. 22, 80) are **DENIED AS MOOT**. It is

**FURTHER ORDERED** that Plaintiff's Cross-Motion to Compel Production of Federal Election Records (Doc. 31) is **DENIED**. It is

**FURTHER ORDERED** that this case is **DISMISSED**.[18] The Clerk is **DIRECTED** to close this case.

---

government "if the agency is authorized to maintain such information and the information is used only to identify the elector on the receiving agency's data base and is not disseminated further and remains confidential." Even if Plaintiff is authorized to maintain Georgia's confidential voter information, Plaintiff has disavowed that its purpose is limited to identifying the elector in its database and has not agreed that the information would remain confidential. Instead, Plaintiff indicated that it would only abide by the statutory limitations in Section 304 of the CRA and *federal* privacy laws. (Doc. 31-1 at 44) (emphasis added).

[18] The Court "is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).

**SO ORDERED** this 30th day of September, 2026.

Victoria Marie Calvert
United States District Judge